Dawson Kerr *et al.*

*v.*

Willis M. Hitt.

1. Publication — *Chicago Legal News is a newspaper, and notice may be published in it.* The Chicago Legal News, published in the city of Chicago, although devoted principally to legal intelligence, is a newspaper in which notices required by statute or the order of courts, may be published, and comes within the statutory definition of a newspaper, for the publication of legal notices.

2. Limitation. Twenty years adverse possession of land accompanied by payment of taxes under a continuous assertion of ownership hostile to all others, will constitute a bar to a right of entry by any one, not within any saving clause of the statute, claiming to have paramount title, whether the claim of the party in possession is rightful or even under a muniment of title or not.

3. Same — *what is possession.* To constitute possession under the limitation laws, it is not necessary a party should have his land all inclosed with a fence. As a general rule it is sufficient if the land is appropriated to individual use in such a way as to apprise all persons in the vicinity who has the exclusive use and enjoyment.

4. Boundary — *between owners may be fixed by act of parties.* Monuments, established by acts of the owners of adjacent lands, are as effectual

to limit the boundaries of their respective lands, when accompanied by actual possession, as appropriate descriptions in their deeds.

5. SAME — *estoppel to dispute after long acquiescence.* Where the patentee of a fractional tract of land made a conveyance of the north half thereof in pursuance of a prior agreement to convey to the grantee a strip 20 rods wide off the north end, and about the date of the deed a blazed line was made across the entire tract so as to cut a strip 20 rods wide off the north side, and the patentee afterwards conveyed to D all of the tract, excepting the part previously conveyed, and it appeared that all the parties acquiesced in the line run as the boundary of their respective lands, and exercised continuously for over thirty years acts of ownership over the land with reference to such line as the true boundary, and made division fences upon such line, neither claiming any of the land beyond such line : *Held,* that the heirs of the first grantee were estopped to deny that such division line was correct, and from claiming any of the land south of such line, and that the second grantee was protected in his possession also under the twenty years limitation law.

APPEAL from the Superior Court of Cook county ; the Hon. S. M. MOORE, Judge, presiding.

This was a petition filed by Willis M. Hitt against Dawson Kerr, Jr., Luther L. Greenleaf, Lombard Decham, Maximillian Decham, George S. Robinson and Asbel Gage, under the act of the legislature, entitled " An act to remedy the evils consequent upon the destruction of any public records by fire or otherwise," in force July 1, 1872.

Lombard Decham filed a cross bill alleging a mistake in the deed of John S. Clark to Mary J. Dennis in conveying the north half of the fractional quarter, instead of the north 20 rods thereof, and prayed that Willis M. Hitt be enjoined from prosecuting his claim, and that the deed to him be set aside as a cloud upon the title of Decham.

Luther L. Greenleaf filed his original bill against Willis M. Hitt and others in which he set up the facts of the case in respect to the conveyance from Clark to Mrs. Dennis, and the establishing the boundary line of her land, substantially as in the opinion of the court, and prayed that certain defects in his title be corrected, and for general relief. The opinion of the

court contains a substantial statement of the facts giving rise to
the controversy.

Mr. W. T. BURGESS, and Mr. B. M. MUNN, for the appellants.

. Messrs. FORRESTER, BEEM & GIBBS, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a proceeding commenced under an act of the legis-
lature, entitled "An act to remedy the evils consequent upon
the destruction of any public records by fire or otherwise," in
force July 1, 1872.   Petitioner alleges, at the date of the de-
struction of the records of Cook county, Edward M. Dennis, one
of the executors of Mary J. Dennis, was the owner of the land
involved in this litigation, particularly setting forth the title;
that afterwards he conveyed it to petitioner, Willis M. Hitt, by
quit-claim deed, makes Lombard Decham and others, supposed
to claim some interest in the premises, parties defendant, and
prays that the title may be established in him.

A demurrer was filed to the petition, which was by the court
overruled, and that decision is one cause assigned for error.
Answers having been filed upon which issues were joined, as
well as upon the cross-bill of Decham, and the original bill of
Greenleaf, a subsequent purchaser of a part of the property
from Decham, which latter proceeding was consolidated with
this cause on the final hearing, the court decreed the relief
sought by the petition and established the title in Hitt.

Without reference to the many objections urged to the
validity of the act of the general assembly, under which this
proceeding was commenced, and the power of a court of chan-
cery under that law to establish the legal title of the premises
in the petitioner, we think the petition ought to have been dis-
missed on the merits of the case.

There is one objection, however, which has reference to the
publication of the notice by which some of the defendants were
brought into court, that we ought, perhaps, to notice.

The statute requires that notice of the filing of the petition in this class of cases shall be given to all known defendants, and "all whom it may concern," by publication in some "newspaper," which notice shall be entitled "Land title notice," and shall be published once a week for four weeks successively; each publication to be in the same newspaper. By the 12th section it is made the duty of the clerk to advertise for bids for publishing such notices, and the judge or judges in the courts where the proceedings are had shall award the printing to the newspaper making the lowest bid therefor. All publications, provided for under the act, are to be made in the newspaper designated. . In this instance, publication of notice of filing the petition was made in the *Chicago Legal News*, a journal of legal intelligence, containing decisions of Federal and State Supreme courts, legal information and general news. No complaint is made that this paper had not been selected in the mode prescribed in the statute, but the objection is, it is not a newspaper, in the sense in which that word is used in the statute.

The statutory definition of a newspaper in which legal notices may be published, unless otherwise provided by contract, is twofold, that is, it shall be a secular newspaper of general circulation, or some paper specially authorized by law to publish legal notices. R. S. 1874, p. 723, sec. 5. Any notice published in a paper coming within either definition is legal.

The "Chicago Legal News" is published in the city of Chicago, in the county where this proceeding was commenced, is published once a week, is devoted principally to the dissemination of legal intelligence, but makes reference to passing events, contains advertisements, brief notices of legislative bodies, personal and political items of interest to the general reader as well as the legal profession. Thus it will be seen it comes substantially at least within the definition given by lexicographers of a "newspaper." It is none the less a "newspaper" because its chief object is the publication of legal news. Many newspapers published in this and other countries are devoted chiefly to special interests, such as religious and political newspapers,

others devoted exclusively to literature, that contain advertisements, news items, personal and political, brief notices of matters of special public concern, and reference to proceedings of legislative and other public bodies. So it is with this journal. Besides legal it contains other items of news, not only connected with the bench and bar, but others of a general interest. It is that class of journal that will circulate among lawyers, real estate and other business men, for it contains information in regard to sales of real estate, whether under judicial process or under powers. Accordingly its advertising columns contain notices of sales under trust-deeds, on execution, judicial sales under decrees of court, and all manner of notices of legal transactions, as well as a limited number of other advertisements usually found in a newspaper of general circulation.

In *Kellog* v. *Carrico*, 47 Mo. 157, it was held the "Legal Record and Advertiser," a journal devoted to the dissemination of legal intelligence, was a newspaper, and that publication in it imparted notice of a sale under a trust-deed. The court in its reasoning said, "It is not the particular kind of intelligence published that constitutes one publication a newspaper rather than another."

The "Legal News" is published by an incorporated company created by an act of the legislature approved February 27, 1869. By the second section it is declared, "the primary object of the company shall be to publish the 'Chicago Legal News,' a weekly newspaper, in the city of Chicago, State of Illinois, devoted mainly to legal matters." The fifth section provides, "any notice or advertisement required by law or the order of any court to be published in any newspaper, shall be as good and valid if published in the 'Chicago Legal News' as in any newspaper."

A public law approved March 27, 1869, made it the duty of the Secretary of State to furnish the "Chicago Legal News Company," publishing a newspaper called the "Chicago Legal News," copies of public laws to be printed and published in that journal.

These several acts of the general assembly may be regarded as a legislative construction, and recognition of the fact, the " Chicago Legal News " is a newspaper in the sense that term is used in the statute. The law-making power must have so understood it, and since then it has been so recognized by the courts, both Federal and State, held in Cook county, and quite generally by the legal profession and others engaged in the transaction of legal business. Since the pas·sage of the act incorporating the " Chicago Legal News Company " it has been the constant practice to publish in that paper legal notices required by law or the order of courts to be published, notices of sales under deeds of trust, notices to non-resident defendants in chancery, and indeed all legal notices required by law or otherwise to be published in a newspaper. Should we now hold such notices illegal because the " Legal News " is not a newspaper, it would unsettle the title to real property of immense value, and work incalculable mischief. Judicial sales, proceedings against non-resident defendants in chancery, proceedings in attachment, sales under deeds of trust and other legal proceedings would be rendered invalid by such a decision. Generally the legal profession and the judiciary have recognized this mode of making publication of notices required by law to be made, as valid as if made in any other newspaper. The legislature declared they should be, and the consequences of a different conclusion would be most disastrous to parties interested.

Independently of the question whether the special acts authorizing publication of legal notices in the " Chicago Legal News " have been repealed by subsequent legislation or the constitution of 1870, there have been so many recognitions by the legislature that the " Chicago Legal News " is a newspaper within the sense in which that term is used in the statute, and that construction has been so long and so generally acquiesced in and acted upon by the bar and the courts, that we are not at liberty to adopt any other.

But another view is, if the courts of Cook county, under authority conferred by general law, have selected and designated the "Chicago Legal News" as the paper in which "land title notices" shall be published, then it would seem to follow, in the language of the statute, it is "a paper specially authorized by law to publish legal notices," and hence a notice published in it would be legal as coming within the second branch of the definition given in the statute, of a newspaper in which it is lawful to make publication.

But this is a question of minor importance in this case, as all parties who have any interest to be affected by the decision, have appeared in person or by counsel.

We come now to consider whether petitioner has shown any right to have the title to the land in controversy established in himself. Both parties claim title through John S. Clark, who entered the fractional quarter, of which this land constitutes a part, in 1841. He borrowed of Mrs. Mary J. Dennis, who lived on the adjoining tract to the north, $105, with which to make the purchase, in consideration of which he was to make her a deed of a portion of the land, which he did. It is claimed he was to make her a deed for a strip 20 rods wide on the north side; but whatever it was, it is described in the deed as the north half of the fractional quarter. It is the title acquired by Mrs. Dennis under that deed that petitioner now claims.

Prior to the entry of the fractional quarter, Clark lived upon that part of the land now in dispute, and in addition to the dwelling-house occupied by himself and family, he had a blacksmith shop upon it. About the time of making the deed to Mrs. Dennis, a blazed line was made across the entire tract, marking the south boundary of a strip 20 rods wide, off the north half of the fractional quarter. By whom it was done, is not distinctly shown, but it is proven that thereafter both Clark and Mrs. Dennis took possession and occupied their respective lands on either side up to this line, treating it as the division line between them. In 1844 Clark conveyed all of

8—75TH ILL.

the quarter section to Casseday, except the part previously conveyed to Mrs. Dennis, and in the same year Casseday conveyed it to Decham by the same description. Decham immediately took possession of the premises, occupying the dwelling-house formerly occupied by Clark, and has resided upon the land ever since. His residence and that of Mrs. Dennis were not far apart. Both of them, with a knowledge of what the other was doing, improved their land up to the blazed line, asserting absolute dominion over it as their own property, and for more than a quarter of a century recognized it as a division line. Each claimed up to the line, but nothing beyond. A division fence was built on the line more than twenty years ago. It was at one time destroyed by fire, but was rebuilt on the same line without objection from the adjoining proprietor.

Mrs. Dennis died in 1869, and it is supposed Clark is dead. No controversy arose in the life-time of either of them as to the quantity of land intended to be conveyed by Clark to Mrs. Dennis. We are left in a great measure to their acts and contemporaneous declarations to determine the quantity. Mrs. Dennis, on the making of the deed, took possession of a strip twenty rods wide off the north side, and Clark retained the residue. Before the conveyance to Cassedy for Decham, Clark had been in the open and notorious possession of the land. He pointed out to Decham the division line, the extent of his own lands and that part claimed by Mrs. Dennis under her deed. By his conveyance of all of the fractional quarter except the portion previously conveyed to Mrs. Dennis, all parties understood it embraced the whole tract except that portion north of the division fence in her actual possession. This proposition admits of no doubt. The acts of the parties about which there can be no controversy are inconsistent with any other theory. Decham resided on that part now claimed by Hitt under his deed, made by the executor of Mrs. Dennis, and took possession up to the line, or division fence. He cultivated a part of it and cut timber wherever he chose upon it without objection from Mrs. Dennis, whose residence was near at hand and who

must have known what he was doing. His fence on a part of the line, and a blazed line across the entire tract, marked his boundary as distinctly and visibly as if there had been a solid wall erected. The proof is entirely satisfactory, both parties recognized the line as marking the limits of their respective lands and fixing a boundary beyond which they could not claim. For a period of more than thirty years Decham has resided on this land, claiming it all the while as his own, according to boundaries fixed by the tacit consent of the adjoining land owner, paying all taxes assessed upon it, and using it for ordinary husbandry.

There is no evidence Mrs. Dennis ever claimed any interest in the north half of the fractional quarter under her deed from Clark, except the strip twenty rods wide off the north side. In 1857 she sold all her lands in that vicinity, including the twenty rods, but did not claim or pretend to sell any part of the land involved in this litigation. After her death one of the executors of her estate made a quit-claim deed to petitioner, Hitt, of all that portion of the north half of the fractional quarter not previously sold by Mrs. Dennis to Gage. This deed was without consideration, and the suit is being prosecuted by Isaac R. Hitt in the name of petitioner for the joint benefit of himself and the heirs of Mrs. Dennis.

The limitation of twenty years adverse possession is invoked as a shield and defense, and we are of opinion it constitutes an effectual bar to the title set up in the petition. It is not contested Decham was in possession under a deed for a part and had the actual control of the entire tract, for a period of more than twenty years. His possession was open, notorious, and hostile to all the world. He claimed to be the owner of the entire tract, under a deed from the patentee. His dominion was absolute and unqualified. No one questioned his ownership, or assumed to have paramount title.

The law applicable to this state of facts is well settled. Twenty years adverse possession of land, accompanied by payment of taxes, under a continuous assertion of ownership, hos-

60                    KERR *et al. v.* HITT.                    [Sept. T.

Opinion of the Court.

tile to all others, will constitute a bar to a right of entry by any
one, not within any saving clause of the statute, claiming to
have paramount title, whether the claim of the party in posses-
sion is rightful or even under a muniment of title.    *Turney* v.
*Chamberlain,* 15 Ill. 271.

Actual possession of land may arise in different ways, by acts
of ordinary husbandry, that indicate an exclusive use and con-
trol, and even by cutting timber upon it, or by any other acts
that manifest an exclusive appropriation to one's own use.    It
is not necessary a party should have his land all inclosed with a
fence before he can be said to be in the actual possession.    As
a general rule, it is sufficient if the land is appropriated to
individual use in such a way as to apprise all persons in the
vicinity who has the exclusive use and enjoyment.    *Brooks* v.
*Bruyn,* 18 Ill. 539 ; *McLean* v. *Fadden,* 61 ib. 106.

Treating the land lying north of the blazed line and the fence
as all that part of the fractional quarter conveyed to Mrs. Dennis
by Clark, then it follows, Decham was in possession of the entire
tract in dispute, under paper title, for his deed, by apt descrip-
tion, embraced all the remainder.    It is as clearly established as
any proposition can be, that all parties in interest so regarded it,
prior to this controversy.

Monuments established by acts of the adjacent owners are as
effectual to limit boundaries of their respective lands, when
accompanied by actual possession, as appropriate descriptions in
the deed.    Of this character are the division fence and blazed
line which we regard as having been established by the adjacent
land owners.    As was said by this court, in *Bauer* v. *Gottsman-
hausen,* 65 Ill. 499, "It has been held, that when parties agree
upon a boundary line and enter into possession according
to that line, they are thereby concluded from afterwards dis-
puting that it is the true line, even where the statute of limi-
tations has not run."

One conclusion is inevitable from the evidence, the blazed
line was run in the first instance to mark the division, and
afterward the fence was erected on that line, if not by the

express, certainly, by the tacit consent of the abutting proprietors. By all the authorities this is sufficient to estop the parties, their heirs and all privies in estate from disputing the fact it is the true line. One other fact, about which there is no dispute, is inconsistent with any other view. It is, that at the time of the execution of the deed, Clark resided on that part of the north half of the fractional quarter now in controversy, within a short distance of the line on which the fence was built, and he or his grantees have resided there ever since. Neither Mrs. Dennis in her life-time, nor any one claiming under her, since her death, ever questioned Clark's or his grantee's title to the land, until the present litigation sprung up, since the destruction of the public records of the county. As we have seen, Mrs. Dennis sold all her lands in that vicinity in 1857, and although the land was then worth $100 per acre, it does not appear it occurred to her she had any interest in this tract. She never pretended at any time to have any interest in it, and the claim now put forth by the heirs is without a shadow of an equity. Having furnished Clark the money with which to make the entry, she knew what portion of the land she was to have. She never complained she did not get all she bargained for. Before her death this land became very valuable, but familiar as she was with all the facts she never sought to recover it. The heirs stand in no better position, and it would be unconscionable to permit them now to insist upon a claim which she never undertook in her life-time to maintain, although the legal title of record appeared to be in her for a period of thirty years before her death. If living, she would be estopped to deny the division line agreed upon and acquiesced in through so great a period constituted the true line, and upon every principle of justice, petitioner, claiming under her, is debarred the right to have the title established in his favor, even for the benefit of the heirs.

This record has been somewhat confused on account of the adoption by agreement of the original bill of Greenleaf as the answer of some of the defendants, but the decree will be

reversed, and the cause remanded with directions to the court to dismiss the petition of Hitt, and decree appropriate relief on the cross-bill of Decham and the original bill of Greenleaf.

*Decree reversed.*