LYNN v. ALLEN ET AL.

[No. 17,988. Filed September 22, 1896.]

SERVICE BY PUBLICATION.—*Newspaper of General Circulation.—Statute Construed.*—A daily newspaper devoted to the general dissemination of legal news and containing other matter of general interest to the public, and having a large general circulation, is "a newspaper of general circulation," within the meaning of sections 320, 1299, Burns' R. S. 1894 (sections 316, 1279, R. S. 1881).

From the Marion Superior Court. *Affirmed.*

*Pickens & Cox*, for appellant.

*H. Taylor*, for appellees.

HOWARD, J.—This was an action in attachment,

brought against the appellant by the appellee, Arthur W. Allen. The appellant, who is a non-resident, entered his special appearance in the cause, and filed a plea in abatement, averring that there had been no service of process upon him, "other than the pretended service of publication in a daily paper called 'The Daily Reporter,' printed and published in the city of Indianapolis, said county," and "that said pretended service by publication is invalid and of no effect for the reason the said 'The Daily Reporter' is not a newspaper of general circulation in said county."

Issue being joined on the plea in abatement, and the evidence being heard, the court found for the said appellee, and judgment was entered in his favor.

It is claimed that the publication of notice in The Daily Reporter was insufficient to give the court jurisdiction over the appellant, for the reason that the said Reporter is not a "newspaper of general circulation," as required by the statute. Sections 320, 1299, etc., Burns' R. S. 1894 (sections 318, 1279, R. S. 1881).

The evidence upon which the court found the publication sufficient under the statute, was, substantially: That The Daily Reporter is now, and was at the time of the publication of said notice, in general circulation throughout the city of Indianapolis, in Marion county, and State of Indiana, among judges, lawyers, bankers, collection and commercial agencies, real estate dealers, merchants, manufacturers, and other professional and business men; that it is also on sale at public news stands; that its circulation in the city of Indianapolis is about 550 copies, and outside said city throughout the State, about 2,500 copies daily; that its circulation is confined to no particular class or calling of the community, but is general among different classes; that it is published and circulated daily, except Sunday; that its columns are

devoted primarily to the dissemination of legal mat-
ters, including proceedings of the Supreme and Ap-
pellate Courts of the State, and of the various Federal,
State, county and city courts sitting at Indianapolis,
giving a complete report, both of the pleadings filed
in cases pending, and also of cases tried and the result
of such trials, as well as publishing those upon the
calendar for trial, and all new suits filed; that it also
publishes the proceedings of the Board of Public
Works of said city, giving said board's action in all
matters relating to street and other improvements,
and assessments against real estate on account there-
of, and all matters of interest in relation to real estate
generally; that it gives daily a complete record of the
deeds filed in the recorder's office of said county, also
of mortgages, mechanics' and other liens, assign-
ments and sales of real estate by the sheriff under
judicial process; that it also contains one or more
columns devoted to the general news of the day of in-
terest to general readers; also quotations of local
securities of interest to newspaper readers generally;
that it is the only newspaper published in said city
containing a complete passenger time table of all rail-
roads entering and leaving said city; that legal notices
like the one in the case at bar have been made and
published in said newspaper, as well as legal notices
advertising sheriff's sales of real estate, and sales by
executors or commissioners, and notice of appoint-
ments of administrators and executors; that it also
contains varied advertising matter, confined to no one
calling or trade, but such as is found in newspapers of
general circulation; that there is also published in it
news and information of a general character, such as
is published in other newspapers of general circula-
tion, and of interest to the general reader.

A copy of The Daily Reporter was also filed as an

exhibit, and shows the general character of the paper to be such as is above set forth.

We think that the foregoing evidence shows, as the court found, that the publication in question is a "newspaper of general circulation," "printed in the English language and published in the county." Such notice would not, of course authorize a personal judgment in the main action against appellant, who is a non-resident, but only a judgment in attachment against his property, and also support the proceedings and judgment against the garnishee defendant. 22 Am. and Eng. Ency. of Law, 135.

By a "newspaper of general circulation," the legislature certainly did not intend a newspaper read by all the people of the county. As a matter of fact, every newspaper is, in greater or less degree, devoted to some special interest. No one, however, would claim that because a newspaper should, for example, be the organ of a certain political party, and especially devoted to the interests of such party, it would not therefore be a newspaper of general circulation. Yet such a newspaper is, to a large extent, read only by the members of the political party whose doctrines are advocated and expounded in its columns.

There is no doubt that where a publication is devoted purely to a special purpose it would be an unfit medium to reach the general public. A medical, literary, religious, scientific, or legal journal, is professedly but for one class, and that class but a comparatively small part of the whole population; and it would be manifestly unjust, as well as against the letter and spirit of the statute, to use such a journal for the publication of a notice affecting the property or personal rights of citizens in general. The newspaper before us, however, is no such professional or class journal. While it is a law publication, in a certain

sense, and of particular interest to the legal profession, yet its character, as shown by the evidence, makes it of general interest to the community at large, especially to that part of the community likely to be concerned with matters in courts and other public business. Indeed, it would seem that this newspaper is quite as likely as any party, or other paper of general circulation to reach the particular persons interested in the proceeding before the court; and, consequently, that the spirit of the statute is quite as well served as could be if the notice were published elsewhere. Its special purpose is to give the news of the courts, and to circulate this news generally amongst all those, who, whether of the legal profession or not, may be interested in such proceedings. We are, therefore, unable to see how the end proposed in the statute, namely, to reach by publication a party interested in a suit in court, could be better attained than by publication in this newspaper.

Wherever the question has been before the courts, the holding, so far as we have been able to learn, has been, that publications such as the periodical here under consideration, ephemeral in form, issued at short intervals, devoted to the general dissemination of legal news, and containing other matter of general interest to the public, are newspapers in the sense contemplated in statutes providing for the publication of legal notices to parties interested in proceedings before the courts. See *Kellogg* v. *Carrico*, 47 Mo. 157; *Benkendorf* v. *Vincenz*, 52 Mo. 441; *Kerr* v. *Hitt*, 75 Ill. 51; *Railton* v. *Lauder*, 126 Ill. 219; *Maass* v. *Hess*, 140 Ill. 576; *Lynch* v. *Durfee*, 101 Mich. 171.

The case of *Beecher* v. *Stephens*, 25 Minn. 146, even if not overruled by subsequent decisions, does not seem to be in conflict with the other cases cited. In that case the Northwestern Reporter, a periodical de-

Lynn *v.* Allen *et al.*

voted almost wholly to the publication of the general laws of the state and of the decisions of the courts of Minnesota and Wisconsin, was held not to be such a newspaper as provided for by the statute concerning publication of legal notices. We have already seen that a purely professional journal, whether legal, medical, religious or other like character, cannot be considered as a "newspaper of general circulation," so as to make it suitable for the publication of legal notices. Neither, of course, would a publication of a legal notice in a Sunday paper be sufficient, even though the paper were not a religious journal. *Shaw* v. *Williams*, 87 Ind. 158 (44 Am. Rep. 756).

The purpose of the statute, namely, that notice may reach the party intended, should be kept in view. So it has been held that where the publication has been made by design in an obscure paper, with the obvious intent to avoid giving actual notice to the party in interest, the proceedings based upon such notice may be held voidable, even though the letter of the statute has been observed. *Webber* v. *Curtiss*, 104 Ill. 309; *Briggs* v. *Briggs*, 135 Mass. 306.

In the case before us, the newspaper circulates, to a great extent, among persons whose business it is to carefully watch the proceedings of the courts; and through such persons, if not directly, those interested are better enabled to receive knowledge of the matter before the court than if the notice were printed in a newspaper whose readers might not give so much attention to court proceedings.

We think the notice by publication in this case was good.

Judgment affirmed.