### In re STERLING CLEANERS & DYERS, Inc.

### FRANKS v. STERLING CLEANERS & DYERS, Inc., et al.

### No. 5589.

Circuit Court of Appeals, Seventh Circuit.

Feb. 12, 1936.

Rehearing Denied March 13, 1936.

Samuel A. Ettelson, Leonard B. Ettelson, Edward C. Higgins and Carl J. Appell, all of Chicago, Ill., for appellant.

Ashcraft & Ashcraft, Irving Breakstone and Martin J. McNally, all of Chicago, Ill. (Russell F. Locke and Charles H. G. Kimball, both of Chicago, Ill., of counsel), for appellees.

Before SPARKS, and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

The single question presented by this appeal is whether the Chicago Daily Law Bulletin is a "newspaper" within the meaning of section 28 of the Bankruptcy Act of 1898 (11 U.S.C.A. § 51).

The question is appropriately raised by a creditor of Sterling Cleaners & Dyers, a bankrupt corporation, by his objection to the validity of the first meeting of creditors of the bankrupt, notice of which was published in the Chicago Daily Law Bulletin. The District Court held the publication proper and the meeting valid.

Section 28 of the Bankruptcy Act, supra, provides as follows: "Designation of newspapers. Courts of bankruptcy shall by order designate a newspaper published within their respective territorial districts, and in the county in which the bankrupt resides or the major part of his property is situated, in which notices required to be published by this title and orders which the court may direct to be published shall

be inserted. Any court may in a particular case, for the convenience of parties in interest, designate some additional newspaper in which notices and orders in such case shall be published."

In pursuance of this statute, the judges of the District Court for the Northern District of Illinois, Eastern Division, on October 1, 1934, entered an order designating the Chicago Daily Law Bulletin (and other publications not here involved) as newspapers in which notices and orders, required by statute or order of the court to be published, might be inserted.

The facts in evidence before us, which appear not to be in dispute, disclose that the Chicago Daily Law Bulletin is a publication that has been published and circulated in sheet form every weekday since 1854; that it is now, and during its entire existence has been, devoted principally to the publication of news and notices of the proceedings in the various courts sitting in Chicago; that it has published many notices of different character directed to be published by the state and federal courts of Chicago, and has, since October 1, 1934, published more than 1,000 notices in bankruptcy matters; that it consistently publishes announcements of proceedings before various courts and the calls of the various judges thereof; that it habitually publishes some items of general news interest, but in comparison with its entire space they occupy a small portion; that it circulates among subscribers in Chicago, Chicago Heights, Berwyn, Evanston, Oak Park, Elgin, and Springfield in the state of Illinois, Atlanta, Ga., New York City, Washington, D. C.; that it has some 2,500 subscribers in various classifications, but confined chiefly to lawyers, public officials, commercial and financial institutions in and about the city of Chicago; that in its present form it carries from 8 to 16 pages of 7 columns each; that in addition it carries display advertising matter of a varying character, want ads, notices of real estate transfers, and weather reports.

Appellant and appellees join in the suggestion that the term "newspaper" as used in the statute in question is used in the ordinary sense in which that term is used in matters relating to the publication of legal notices.

The Century Dictionary defines a "newspaper" as: "A paper containing news; a sheet containing intelligence or reports of passing events, issued at short but regular intervals, and either sold or distributed gratis; a public print, or daily or weekly or semi-weekly periodical, that presents the news of the day, such as the doings of political, legislative, or other public bodies, local, provincial, or national current events, items of public interest on science, religion, commerce, as well as trade, market, and money reports, advertisements, and announcements, etc. Newspapers may be classed as general, devoted to the dissemination of intelligence on a great variety of topics which are of interest to the general reader, or special, in which some particular subject, as religion, temperance, literature, law, etc., has prominence, general news occupying a secondary place."

Various definitions have been given by the courts of the term "newspaper" in connection with the construction of statutes requiring publication of various kinds of legal notices, but when the term has been used without qualifying language it is pretty generally agreed that it means a medium for the dissemination of news of passing events printed and distributed at short but regular intervals.

The Supreme Court of Minnesota, in the case of Hull v. King, 38 Minn. 349, 37 N.W. 792, 793, said: "If a publication contains the general and current news of the day, it is none the less a newspaper because it is chiefly devoted to the dissemination of intelligence of a particular kind, or to the advocacy of particular principles or views. Most newspapers are devoted largely to special interests, political, religious, financial, moral, social, and the like, and each is naturally patronized mainly by those who are in accord with the views which it advocates, or who are most interested in the kind of intelligence to which it gives special prominence. But, if it gives the general current news of the day, it still comes within the definition of a newspaper."

In the case of Hall v. City of Milwaukee, 115 Wis. 479, 483, 91 N.W. 998, 999, the Supreme Court of Wisconsin, in discussing the Daily Reporter, a publication very similar to the one under consideration, said: "The Reporter addresses itself to special fields of circulation and of news, and is, of course, widely different, both in contents and circulation, from the great daily newspapers, as they are known to the general public. It is, in brief, what its name indicates, a law and business reporter,

reaching but a few hundred out of the hundreds of thousands of population of Milwaukee, and yet it cannot be said to fail of compliance with most of the recognized legal definitions of a 'newspaper.'"

The Supreme Court of Indiana, in dealing with a publication in all respects very similar to the Chicago Daily Law Bulletin, in the case of Lynn v. Allen, 145 Ind. 584, 44 N.E. 646, .647, 33 L.R.A. 779, 57 Am. St.Rep. 223, said: "As a matter of fact, every newspaper is in greater or less degree devoted to some special interest. No one, however, would claim that because a newspaper should, for example, be the organ of a certain political party, and especially devoted to the interests of such party, it would not, therefore, be a newspaper of general circulation. Yet such a newspaper is, to a large extent, read only by the members of the political party whose doctrines are advocated and expounded in its columns. There is no doubt that where a publication is devoted purely to a special purpose it would be an unfit medium to reach the general public. A medical, literary, religious, scientific, or legal journal is professedly but for one class, and that class but a comparatively small part of the whole population; and it would be manifestly unjust, as well as against the letter and spirit of the statute, to use such a journal for the publication of a notice affecting the property or personal rights of citizens in general. The newspaper before us, however, is no such professional or class journal. While it is a law publication in a certain sense, and of particular interest to the legal profession, yet its character, as shown by the evidence, makes it of general interest to the community at large, especially to that part of the community likely to be concerned with matters in courts and other public business. Indeed, it would seem that this newspaper is quite as likely as any party or other paper of general circulation to reach the particular persons interested in the proceeding before the court; and, consequently, that the spirit of the statute is quite as well served as could be if the notice were published elsewhere. Its special purpose is to give the news of the courts, and to circulate this news generally among all those who, whether of the legal profession or not, may be interested in such proceedings. We are therefore unable to see how the end proposed in the statute, namely, to reach by publication a party interested in a suit in court, could be better attained than by publication in this newspaper."

The Supreme Court of Illinois has held in the case of Railton v. Lauder, 126 Ill. 219, 18 N.E. 555, that the Chicago Daily Law Bulletin, the identical publication now under. consideration, was "a secular newspaper of general circulation." The applicable statute then under consideration contained qualifying terms that the federal statute now under consideration does not contain, but the conclusion there reached is all the more applicable to the less exacting statute now before the court.

The Supreme Court of Illinois has also held that the Chicago Legal News, the Chicago Law Journal, and the Chicago Recorder are newspapers of general circulation. Kerr v. Hitt, 75 Ill. 51; Pentzel v. Squire, 161 Ill. 346, 43 N.E. 1064, 52 Am. St.Rep. 373; Eisenberg v. Wabash, 355 Ill. 495, 189 N.E. 301.

Many of the cases cited by appellant to support the contention that a publication of the character of the Chicago Daily Law Bulletin is not a "newspaper" within the meaning of the statute are distinguishable from the instant case because of material differences in the statute or in the publication there in question. In this group we would mention Beecher v. Stephens, 25 Minn. 146, holding the Northwestern Reporter is not a newspaper; In re Charter Application, 11 Phila. 200, where the statute required the publication to be in "two newspapers of general circulation"; Continental Life Ins. Co. v. Mahoney, 185 Ark. 748, 49 S.W.(2d) 371, In re Herman, 183 Cal. 153, 191 P. 934, In re David, 98 Cal. App. 69, 276 P. 419, and Reagan v. Duddy (Ky.) 78 S.W. 430, where the papers in question published fewer items of general interest; People v. Somers, 153 App.Div. 623, 130 N.Y.S. 761, 138 N.Y.S. 1136, where the statute was entirely dissimilar to that in the instant case; Crowell v. Parker, 22 R.I. 51, 46 A. 35, 84 Am.St.Rep. 815, where the decision was based on custom and usage.

There are other opinions by state courts involving similar statutes cited by appellant which sustain his contention that the Chicago Daily Law Bulletin is not a "newspaper" within the meaning of this statute. Among these are State v. Rose, 93 Fla. 1018, 114 So. 373, 374; McDonald v. Shreveport, etc., Ass'n, 178 La. 645, 152 So. 318.

It thus appears that there is a conflict in the decisions of the state courts that is in some instances irreconcilable. We believe, however, that the great weight of authority of the various state courts argues for a construction of the term "newspaper" that sustains the contention of appellees herein.

■ Unaided by the decisions, however, we are impressed with the thought that Congress, in the enactment of section 28 of the Bankruptcy Act, intended no restrictive qualifications to attach to the word "newspaper." If it had so intended, it would have been simple to embody such qualification in the act. Congress has spoken at different times on the subject of constructive notice, and, when it deemed it wise to impose qualifications on the character of the publication, it has not hesitated to do so. In the enactment of section 401, title 39 U.S.C.A., in relation to advertising undelivered letters, it said: "Advertising letters not delivered. The Postmaster General may direct the publication of the list of nondelivered letters at any post office by written list posted in some public place, or, when he shall deem it for the public interest, he may direct the publication of such list in the daily or weekly newspaper regularly published within the post-office delivery which has the largest circulation within such delivery, and where no daily paper is published within the post-office delivery, such list may be published in the daily newspaper of any adjoining delivery having the largest circulation within the delivery of the post office publishing the list; and in case of dispute as to the circulation of competing newspapers, the postmaster shall receive evidence and decide upon the fact. Such list shall be published as frequently as the Post-master General may deem proper, but not oftener than once a week."

In section 402 of the same title it said: "The list of nondelivered letters addressed to foreign-born persons may be published in a newspaper printed in the language most used by them, which shall be selected in the manner prescribed in section 401 of this title."

Again in section 106, title 2 U.S.C.A., Congress directed that the Secretary of the Senate should advertise: "In one or more of the principal papers published in the District of Columbia, for sealed proposals for supplying the Senate and House * * with the necessary stationery."

We thus find that when Congress sensed a special need for particularity it undertook to so express itself, and we conclude by analogy that in the act under consideration it saw no such need and did not intend that the term "newspaper" should go beyond the generally accepted meaning of the word.

Section 28 of the Bankruptcy Act is a part of the original act of 1898, and has remained unchanged. We find convincing evidence of the intention of Congress in the use of the word "newspaper" in the congressional debates of that time. In the consideration of the section in question, Senator Stewart said: "There will be in each district one newspaper in which all official notices, decrees, and orders required to be published will be inserted; in particular instances such publications may be duplicated in an additional newspaper for the convenience of the parties. * * * Then, on page 18, the court has the power to select a newspaper. Here is a big job. Instead of saying it shall be a newspaper nearest by or most largely circulated, so as to confine it somewhere, make some regulation, it says: 'Courts of bankruptcy shall by order designate a newspaper published within their respective territorial districts,' * * *"

The following amendment was also offered but not accepted: " * * * Said order shall in the meantime be published once a week for four successive weeks prior to said hearing in a weekly or daily newspaper of general circulation in the vicinity where the petitioner resides, to be designated by the court in the order aforesaid."

We thus see that Congress, in deliberating on the provisions of section 28, gave due consideration to the matter of attaching qualifying language to the term "newspaper," but in its final analysis declined to so qualify.

■ This section of the Bankruptcy Act has remained unchanged for 37 years, and the Chicago Daily Law Bulletin has maintained continuous existence for more than 81 years, and has been generally accepted by courts, lawyers, and laymen alike as a proper medium for the publication of legal notices. This court will not at this late date outlaw such publication as a "newspaper" within the meaning of the statute in question, except in the face of most convincing proof. This character of proof

does not exist in the instant case. The judgment of the lower court is affirmed.

Affirmed.