618 P.2d 621

Daniel E. McINTYRE and Joyce McIntyre, his wife, Plaintiffs–Appellees,

v.

MOHAVE COUNTY, a body politic, Defendant–Appellant.

No. 1 CA–CIV 4468.

Court of Appeals of Arizona, Division 1, Department A.

May 29, 1980.

Rehearing Denied July 17, 1980.

Review Granted Sept. 9, 1980.

Leek & Lee by Terrence S. Leek, Paul Lenkowsky, Bullhead City, for plaintiffs–appellees.

Bruno & Weisberg, P. C., by Sheldon H. Weisberg, Sp. Deputy County Atty., Kingman, for defendant–appellant.

OPINION

WREN, Judge.

This appeal concerns the interpretation to be given A.R.S. § 11–822 as to the extent of

publication required for the adoption of zoning ordinances in an area of a county away from the county seat.

The facts are not in dispute. On June 17, 1968, the Mohave County Board of Supervisors voted to extend the County's zoning ordinance to include the land involved in the present appeal. That ordinance, Resolution No. 68–69, zoned the property as "A–R", signifying agricultural and residential uses. Then, on August 5, 1968, the County, in Resolution No. 68–135, rezoned the property as "R–E", designating residential and recreational uses. In early 1975, appellees, Daniel B. McIntyre and Joyce McIntyre, purchased the land. Shortly, thereafter, they constructed a building to be used as a service center for a soft water dealership. This use was prohibited under either of the prior zoning classifications.

Appellees' property is located in a portion of Mohave County known as the Mohave Valley. Bullhead City, the major town in Mohave Valley, is located in the northern sector of the valley, while appellees' property is in the southern end. This area was sparsely populated in 1968, but in recent years it has experienced a rapid population growth. The trial court found that the Bullhead City–Mohave Valley area was part of one of five general planning areas in the County, and that these planning areas each possessed unique problems separate and distinct from one another.

In 1968, the Mohave Valley News was published in Bullhead City and distributed throughout the Mohave Valley area. It published approximately 1,600 newspapers a week. Six hundred were mailed to subscribers and the remainder were dispersed through retail outlets. Also during 1968, the Mohave County Miner was published weekly in Kingman, the county seat, and distributed throughout the County. It dispersed between two and three hundred newspapers a week throughout the Bullhead City–Mohave Valley area, thirty to fifty of which were mail subscriptions. The Mohave County Miner had a news correspondent in the Mohave Valley, and published news and advertising from the area in a special section of the newspaper designated as the "Colorado River Chronicle."

The Mohave Valley News was first published in 1965, and in 1970 it was purchased by the owners of the Mohave County Miner. Since then, the Miner has initiated daily publication, and its name was changed to the Kingman Daily Miner.

Notices of the proposed zoning and rezoning of appellees' property were published in the Mohave County Miner prior to the hearing dates. No notices were published in the Mohave Valley News. In fact, the former owner and publisher of the News stated that he could not recall ever publishing any legal notices from Mohave County, the State of Arizona or the Federal Government.

After appellees had constructed their building, the County refused to issue a building permit due to lack of conformity with the County Zoning Code. Furthermore, the County refused to rezone appellees' land to allow for its present use. Appellees brought suit, advancing several arguments seeking to void Resolution Nos. 68–69 and 68–135 or to otherwise exempt their property from the resolutions. After a trial on the merits, the trial court determined that the resolutions were invalid in all areas other than the County seat, because they were not enacted in accordance with the provisions of A.R.S. § 11–822. Appellees' other arguments were not addressed by the court.

■ We first note that failure to follow statutory notice requirements renders a zoning ordinance void. *Hart v. Bayless Investment & Trading Co.*, 86 Ariz. 379, 346 P.2d 1101 (1959). A.R.S. § 11–822 states:

Adoption of county plan by commission; notice; hearing

The commission may adopt the county plan as a whole, or by successive actions adopt separate parts of the plan corresponding with functional divisions of the subject matter, and from time to time, subject to the limitations of this chapter, amend, extend or add to the county plan. *Before adoption of the plan or any part,*

amendment, extension or addition, the commission shall hold at least one public hearing thereon, after giving at least fifteen days notice thereof by one publication in a newspaper of general circulation in the county seat. In addition, the notice shall be published in a newspaper of general circulation in the area to be affected, or adjacent thereto, if the area affected is other than the county seat. Adoption of the plan or any part thereof shall be by resolution, and shall require the affirmative votes of a majority of the members. (Emphasis added.)

Appellant contends that the notice requirements were satisfied because the statute does not preclude the use of only one newspaper as long as it qualifies as a newspaper of "general circulation" in both the county seat and the affected area. Appellees argue, on the other hand, that if the affected area is one other than the county seat then public notice must be given by a second or "additional" newspaper of "general circulation" in the area affected. Appellees do not attack appellant's assertion that the Mohave County Miner was a newspaper of "general circulation" within the Mohave Valley area. They merely point to the language of A.R.S. § 11–822 as expressing a clear legislative intent to provide for two completely separate publications when the affected area has its own newspaper of "general circulation." Admittedly, the phrase "in addition" supports this contention, but when construed in the light of its purpose and the context of the entire statute, however, we are of the opinion that the legislature did not intend this result.

■ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Phoenix Title & Trust Co. v. Burns*, 96 Ariz. 332, 395 P.2d 532 (1964). Where the language, as here, is susceptible to more than one interpretation the court must adopt that which is reasonable. *Sandblom v. Corbin*, 125 Ariz. 178, 608 P.2d 317 (1980). However, "in arriving at the legislature's intent, the effect and consequences of alternative constructions may be considered." *Department of Revenue v.* *Southern Union Gas Co.*, 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978). *Also see, Greyhound Parks of Arizona, Inc. v. Waitman*, 105 Ariz. 374, 464 P.2d 966 (1970).

The issue thus presented is whether A.R.S. § 11–822 was satisfied by the County's publication of its notice of hearing in only the Mohave County Miner or whether publication was also required in the Mohave Valley News. The question is one of first impression in this jurisdiction.

■ The preliminary issue to such a determination, of course, is whether the Mohave County Miner was a newspaper of "general circulation" in the Bullhead City–Mohave Valley area. The trial court found only that the Mohave County Miner was published in Kingman, the Mohave County Seat. However, since the evidence is not in conflict we are entitled to draw our own conclusions of law from the undisputed evidence before us. *Walsh v. Eberlein*, 114 Ariz. 342, 560 P.2d 1249 (1976).

A case often cited which involves the question of "general circulation" is *Burak v. Ditson*, 209 Iowa 926, 229 N.W. 227 (1930). *See Wahl v. Hart*, 85 Ariz. 85, 332 P.2d 195 (1958); *Shulansky v. Michaels*, 14 Ariz.App. 402, 484 P.2d 14 (1971). In *Burak*, 229 N.W. at 228, the court said:

A study of the decisions bearing on the question before us suggests the following criteria: First, that a newspaper of general circulation is not determined by the number of its subscribers, but by the diversity of its subscribers. Second, that, even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of "general circulation". (citations omitted.)

In *Shulansky*, Division Two of this Court held that the "Arizona Weekly Gazette" the designated official newspaper of Maricopa County with a circulation of only 2,169, was a newspaper of "general circulation" in light of the criterion set forth in the *Burak* decision.

In the present case, no one disputed the fact that the Mohave County Miner was a newspaper of "general circulation" in Mohave Valley. It contained news of interest to the people of that area, and the breadth of its advertisers was certainly indicative of the diversity of its subscribers. While the circulation of the Miner was much less than the Mohave Valley News, it was not so limited as to disqualify it as a newspaper of "general circulation". Compare, for example, the case of *Moore v. State*, 553 P.2d 8, 21–22 (Alaska 1976), where a newspaper with a circulation of only 130 in a town of 3,500 was deemed to be one of "general circulation" because "the number of readers, albeit small, was not so insignificant that the newspaper would fail to reach a diverse group of people in the community." Consequently, under these authorities and the facts before us, we hold as a matter of law, that in 1968 the Mohave County Miner was a newspaper of "general circulation" in the Bullhead City–Mohave Valley area.

■ The clear purpose of A.R.S. § 11–822 is to give notice to interested parties and allow them an opportunity to be heard. *See Hart v. Bayless.* While publication in both newspapers may have been preferable in principle, we hold that the notice requirement is satisfied by publication in only one newspaper when it qualifies as one of "general circulation" in both locales.

Because appellees' other arguments were not decided by the trial court, we reverse the judgment and remand for further proceedings not inconsistent with this opinion.

. FROEB, P. J., and DONOFRIO, J., concur.