The Honorable Myra Jones State Representative 2001 North Tyler Little Rock, AR 72207
Dear Representative Jones:
You have requested an official opinion as to whether The Daily Record, a newspaper published in Pulaski County, Arkansas, qualifies, under state law, as a newspaper of general circulation and whether it can act as a carrier of Pulaski County legal notices.
It is my opinion that The Daily Record is a general circulation newspaper entitled to carry Pulaski County legal notices, based upon the following:
You have provided extensive factual background as to the Record. It is published five (5) days a week throughout the year. Distribution of the paper is primarily through "paid" distribution to area newsstands and some copies are sold at the newspaper's business office at 1300 South Main Street, Little Rock, and through other means. The Record does maintain a second-class mailing permit.
Your request letter states that the paper regularly reports on a wide variety of topics, including filings in local courts, discussion of court cases, property for sale, and information of a general legal nature. In addition, the newspaper runs daily listings of new residents in Little Rock and other surrounding municipalities, building permit applications, business petitions, deeds filed, listing of bankruptcies, city board agendas, legislative summaries and general business items. For purposes of this opinion, we have relied on the facts provided in your request as to the general news content of the Record.
Finally, your request notes that the type of circulation of the Record is "quite similar to that of other newspapers in the area." While circulation statistics were not provided to us, presumably the circulation notation refers to the type of subscriber, as seventy-one (71) categories of businesses or individuals are then listed as paid subscribers. The circulation of the Record is, to our information, significantly less than that of other newspapers published in Pulaski County. After examination of these facts, as provided, we turn to the applicable law.
Arkansas Code Annotated 16-3-105 defines a legal newspaper as a publication "bearing a fixed title or name, published at a fixed place of business, regularly issued at fixed intervals as frequently as once each week and having a second-class mailing privilege, and being not less than four (4) pages of five columns each." A.C.A. 16-3-105(a). Further, that statute provides:
 For a newspaper to eligible (sic) to publish legal notices and to be classified as a legal newspaper, it shall have been published at regular intervals continuously during a period of at least twelve (12) months following the securing of a second-class mailing privilege. . . . The newspaper shall be circulated and distributed from an established place of business to subscribers and readers generally of all classes in the county or counties in which it is circulated for a definite price or consideration for each copy or at a fixed price per annum. . . .
A.C.A. 16-3-105(c)(1).
Additionally, in order to be a "legal newspaper" a publication must meet other criteria, i.e., having at least 50% of the subscribers thereto having paid cash for their subscriptions, and publishing an average of 40% news matter "which has sufficient merit to have created a following of paid readers." A.C.A.16-3-105(d)(1) and (2).
According to the information provided, the Daily Record meets the requirements of 16-3-105(a) and (d)(1) and (2). The question then remains as to whether it is a newspaper of "general circulation" within the ambit of16-3-105(b) and (c)(1). See also, A.C.A. 16-3-106.
In determining whether the Daily Legal News (a predecessor to The Daily Record was a legal newspaper, the Arkansas Supreme Court in Continental Life Insurance Company v. Mahoney, 185 Ark. 748, 49 S.W.2d 371 (1932), reviewed the specific facts surrounding publication of that newspaper. It noted where the newspaper was published and printed, that it had a second-class mailing permit, that it had no correspondents or reports, that it was published daily, the subscription rate, the physical size of the newspaper, the variety of subscribers, and how the newspaper was sold (newsstand or subscription). Most importantly to its final analysis, the Court addressed the content of the daily newspaper. The Daily Legal News specialized in court news, real estate, statistics and other items of specific interest, but was not a newspaper of general interest.
The Court stated, at page 750, that the primary purpose for the printing of legal ads is to give the notice the widest publicity available. Then, the Arkansas Supreme Court proceeded to adopt the test adopted in a majority of American jurisdictions; namely, that the determining question as to whether or not a publication can carry legal ads is not necessarily the number of subscribers a publication has in a certain geographic region, but rather, whether that publication regularly carries the record of events occurring of general interest to the public as a whole. Id. at 751.
A follow-up case, Williamson v. Nixon, 187 Ark. 762,62 S.W.2d 24 (1933), held that the Daily Legal News had become a legal newspaper within the meaning of Arkansas statute by making itself more available to the public by lowering subscription rates and by carrying items of general interest.
These cases, though decided in the 1930's, stand as applicable law in Arkansas as no decisions have been rendered to the contrary. A similar statute to that of Arkansas' was at issue in Great Southern v. McDowell,284 S.E.2d 457 (N.C. 1981), in which a competing newspaper challenged the authority of a weekly newspaper to publish the legal notices of a county in which both newspapers were actually published. Specifically, the plaintiff alleged that the defendant did not meet the "general circulation" provision of the North Carolina statutes. First, the North Carolina Supreme Court reviewed the relevant facts surrounding publication of both newspapers. It found that the defendant contained items of general interest, featured local news, political columns, human interest stories, and contained advertising from a great variety of businesses throughout the county. On the other hand, the population of the county was such that only 11.7% of the registered voters lived in the town in which the defendant paper was published. Fifty-two point four percent (52.4%) of the registered voters lived in the county seat in which the plaintiff paper was published. Only 117 paid subscribers outside of defendant's publishing town were in the county. In other words, the remainder of the county which contained 88.3% of the population only had 117 copies of the defendant newspaper distributed therein.
That court held, however, that because the defendant newspaper had content of interest to the general reader, was available throughout the county to all who wished to subscribe, and had more than a "de minimis number" of paid subscribers in the county, it satisfied the general circulation criteria of the North Carolina statutes.
In a lengthy discussion, the North Carolina Supreme Court noted that cases from most jurisdictions make clear that the term "general circulation" when applied to newspapers refers not so much to the numerical or geographical distribution of the newspaper as it does to the content of the paper itself. The primary consideration is whether the newspaper contains information of general interest. See, Burack v. Ditson,209 Iowa 926, 929, 229 N.W. 227 (1930); Hesler v. Coldron, 29 Okla. 216, 116 P. 787 (1911); Lynn v. Allen,145 Ind. 584, 44 N.E. 646 (1896); Hanscom v. Meyer,60 Neb. 68, 82 N.W. 114 (1900); Puget Sound Publ. Co. v. Times Printing Company, 33 Wn. 5551, 74 P. 802 (1903); Shulansky v. Michaels, 14 Ariz. App. 402, 484 P.2d 14
(1971).
Expanding on this principle, the Illinois Supreme Court held in People v. South Dearborn Street Bldg. Corp.,372 Ill. 459, 462, 24 N.E.2d 373 (1939), that in determining whether a newspaper was one of general circulation, a newspaper that was not of a special or limited character, but was circulated among all classes and was not confined to a particular class or calling in the community, qualified.
The distribution of the newspaper need not be general or uniform throughout the district which it could conceivably serve. And in Ruth v. Ruth,39 Ind. App. 290, 79 N.E. 523 (1906), the newspaper at issue was one of general circulation because, although its circulation numbered less than half of that of other newspapers circulated in the county, "no fixed number of subscribers is required to constitute general circulation. A newspaper's circulation does not necessarily mean that it is read by all the people of the county or township." Id. at 293.
There are cases which hold that a newspaper with no subscribers in the relevant district does not meet the statutory requirement of general circulation. Wahl v. Hart, 85 Ariz. 85, 332 P.2d 195 (1958). A few cases have held that "general circulation" can be equated with "extensive circulation" Times Printing Co. v. Star Pub. Co., 51 Wn. 667, 99 P.2d 1040 (1909). But the majority of courts deciding this issue have concluded that a newspaper qualifies as one of "general circulation" despite a relatively small numerical distribution. See e.g., Moore v. State, 553 P.2d 8 (Alaska, 1976); McIntyre v. Mohave County, 127 Ariz. 127, 618 P.2d 621, rev'd. on other grounds, 127 Ariz. 317 (Ariz.App. 1980); State ex rel Reorganized School District v. Holman, 275 S.W.2d 280 (Mo. 1955); Board of Commissioner's of Decatur County v. Greensberg Times,215 Ind. 4781, 19 N.E.2d 459 (1939); State v. Board of County Commissioners, 106 Mont. 251, 76 P.2d 648 (1938); Robinson v. State, 143 S.W.2d 629 (Tex. 1940).
There are statutes in other states which provide for a newspaper to have "substantial distribution" to paid subscribers in a certain city or county. In one such jurisdiction, a newspaper with only twelve (12) paid subscribers out of a population of 79,000 did not qualify to run legal ads. In re Carson Bulletin,85 Cal.App.3d 785, 149 Cal.Rptr. 764 (1978). Arkansas' statute, of course, does not refer to substantial distribution, but to general circulation.
In concluding that the defendant newspaper was one of "general circulation" in Great Southern v. McDowell, supra, it was concluded that a "de minimis" number of paid subscribers does not mean that those subscribers must be evenly distributed in every city, town, or section of the county or taxing unit. Nor did publication have to be in the paper with the widest geographical distribution in the county.
Given the fact that the Arkansas Supreme Court has engaged in the same type of analysis as other courts deciding the issue of "general circulation" in jurisdictions with like statutes, and that the weight of authority holds that the limited extent of circulation within a county is not the deciding factor in determining whether a paper has general circulation, it is my opinion that:
 (1) The publishing of Pulaski County legal notices in The Daily Record does provide the extent of public exposure to legal notices as anticipated by A.C.A. 16-3-105 and 16-3-106;
 (2) Since, according to the information you have provided, the Daily Record does have paid subscribers in Pulaski County, Arkansas, and is a newspaper of general interest, it can legally act as a carrier of Pulaski County legal notices;
 (3) The numerous cases outlined above provide specific guidelines as to what constitutes "general circulation" as used in Arkansas and other jurisdictions. The factors of general interest, some subscribers, and availability would likely be adopted as the determinative analysis by the Arkansas courts. The phrase "general circulation" cannot be, thus, fairly interpreted as meaning "dominant circulation."
As noted, although there are newspapers in Pulaski County with a greater circulation than that of The Daily Record, such is not the determining criteria. Rather, the content of a newspaper and the appeal of that content to a general reader, is determinative. In the distant past, The Daily Record predecessor was determined by a court as not having sufficient articles of general interest to qualify it as a newspaper of general circulation. Continental Life Ins., supra.
Only a factfinder would be equipped to determine, with specificity, the appeal of the Records current content, as was accomplished in the Continental case. As a general matter, though, the facts you provide indicate topics of general interest are regularly covered by the Record.
Therefore, it is my opinion that, since The Daily Record meets the criteria of Arkansas statutes, it is entitled to publish legal notices.
The foregoing opinion, which I hereby approve, was prepared by Solicitor General R. B. Friedlander.