332 P.2d 195

John C. WAHL and Frances Wahl, husband and wife, Earl W. Hoffman and Grace Hoffman, husband and wife, and Blair E. Johns and Mary E. Johns, husband and wife, Appellants,

v.

James G. HART, James T. O'Neill, Sr., and James E. Lindsay, as Members of and constituting the Board of Supervisors of Maricopa County, Arizona, Appellees.

No. 6548.

Supreme Court of Arizona.

Nov. 26, 1958.

Fennemore, Craig, Allen & McClennen, Phoenix, for appellants.

Charles C. Stidham, County Atty., John B. Marron, Deputy County Atty., Phoenix, for appellees.

STRUCKMEYER, Justice.

This action was brought by appellants to set aside an order of the Board of Supervisors of Maricopa County, Arizona, creating the Georgia Improvement District. The trial court ordered judgment in favor of the appellees, defendants below, thereby holding that the district was legally formed. This appeal followed.

By statute, improvement districts in counties may be organized in areas lying without incorporated cities and towns, and the cost thereof assessed against the property specially benefited. While the Improvement District Act provides for certain notices to those concerned, we are here only directly concerned with § 11–705, subd. B, A.R.S. 1956. It provides that "Notice announcing the hearing [for the creation of a district] * * * shall be published twice in a newspaper published in the county and of general circulation within the proposed district."

Notice of the hearing was published in the Arizona Weekly Gazette, the duly designated official newspaper of Maricopa County, a publication devoted to the dissemination of news on a variety of topics of interest to the general reader, but giving special prominence to legal news, including the proceedings of the Supreme Court and of the local courts sitting in Maricopa County. Similar publications have usually been held to be newspapers of general circulation. 39 Am.Jur. 7, § 9.

The Arizona Weekly Gazette is published at Phoenix, Arizona, and is delivered by mail only on subscription. There were no subscribers within the boundaries of the proposed district at the time of the

hearing by the Board. While the possibility was not precluded that residents of the district had access to it at their places of employment, no evidence was offered which tended to establish that it actually passed into the hands of such residents. It is therefore the appellants' position that the Arizona Weekly Gazette is not within the statutory category as a newspaper of general circulation *"within the proposed district."* With this contention we agree.

■ It is the aim of statutes requiring general circulation of a newspaper that the publication be generally read so that the contents of the notice be brought home to the public generally. Pirie v. Kamps, 68 Wyo. 83, 229 P.2d 927, 26 A.L.R.2d 647. Consequently, we assume at the outset that where the statute requires circulation within a particular area, the aim is for the contents of the notice to be brought home to that portion of the general public within that area. This assumption is inferentially rejected by appellees, for they urge that the proper construction of the phrase "general circulation" requires consideration of the qualitative aspects rather than the quantitative aspects of the publication, it being said "Whether a newspaper is one of general circulation is a matter of substance, and not of size." Burak v. Ditson, 209 Iowa 926, 229 N.W. 227, 228, 68 A.L.R. 538, and Pirie v. Kamps, supra.

In examining the authorities cited by appellees, we note that the Pirie case relies on the Burak case, which in turn relies on in Re Green, 21 Cal.App. 138, 131 P. 91, 93. In the Green case the California District Court said:

" * * * As to whether it is such a newspaper [of general circulation] is manifestly a matter of substance and not *merely* of size; and that it is of general circulation must *largely* depend upon the diversity of its subscribers rather than upon mere numbers." [Emphasis supplied]

This language does not support the unqualified statement that the size of the circulation has no bearing whatsoever upon the question. Rather, we believe, the court was there saying that mere size is not the only test to determine the character of a publication as one of general circulation. Surely, the extent of the circulation cannot be wholly disregarded else, as here, the number of readers in a given area might so dwindle that finally a point of complete non-existence is reached. In that event, the aim of the statute to give notice to those concerned is defeated.

■ Contrary to the appellees' position there are decisions which specifically turn on the number of copies in circulation. For example, in Times Printing Co. v. Star Pub. Co., 51 Wash. 667, 99 P. 1040 the circula-

tion was 1,000 copies in the City of Seattle at a time when the population was 274,000; and in Doster v. City of Cleveland, 20 Ohio Dec. 548 the circulation was 1,000 in 500,000. In both instances, the publications were held not to be of "general circulation." We do not mean to suggest from those decisions that a ratio of circulation to population is to be inferred. We simply conclude that the term is not wholly devoid of a quantitative connotation. It implies a necessity for some circulation among those affected by the contents of the notice.

If we concluded that substance alone is the sole test to determine general circulation, we would have to disregard the ordinarily well-understood meaning of the word. Webster's New International Dictionary, 2d Ed. defines "circulation" in the general sense as "the act of passing from place to place or person to person * * *." It also defines "circulation" in a restricted sense used in journalism as "the average total number of copies issued and distributed * * *." Palpably, by either definition, the word signifies the attribute of movement. Such movement is the passing from place to place and person to person, or the issuance and distribution of copies of the publication. This attribute of movement is coupled with a direction by the legislature that the movement be "within the proposed district." The latter phrase "within the proposed district" signifies physical presence inside the boundaries of that area. It is the notice which must be physically present moving there. Without this movement within the proposed district there can be no circulation, general or otherwise.

Our conclusions are further reinforced by an examination of other parts of the Improvement Act. In the Act there are eight sections which require newspaper publication of notice. Seven of these require publication in a newspaper published or circulated in the district or in the county. Section 11–705 subd. B, supra is unique in that it alone absolutely requires circulation within the proposed district. Seemingly, the legislature has recognized in the initial step the importance of all acquiring knowledge that their property may be included in the proposed district and thus ultimately subject to the burden of special assessments

█ Finally, appellees contend that the appellants may not raise the sufficiency of the publication since this question was not presented to the Board of Supervisors. We think it is enough to say that where the sufficiency of the notice of the meeting creating the district is the issue, a party ought not to be required to attend the meeting and raise the objection before he may take advantage of the statute and appeal. Were it otherwise, one who did not have knowledge of the meeting by reason of lack of notice would never be able to present the question in court simply because he never had the opportunity to be heard by

the Board. We recognize that some of the appellants were present at the meeting creating the district, but as to others, there is no record of their presence.

Appellants also contend that irrespective of our views on the validity of the publication of notice, § 11–705, subd. B is unconstitutional for the reason that its provisions, even if complied with, deprive them of their property without due process of law. This contention is predicated upon a line of recent cases in the Supreme Court of the United States, the last of which is Wisconsin Electric Power Co. v. City of Milwaukee, 352 U.S. 948, 77 S.Ct. 324, 1 L.Ed.2d 241, and see opinion on remand, Wisconsin Electric Power Co. v. City of Milwaukee, 275 Wis. 121, 81 N.W.2d 298, and comment on recent decisions 41 Marquette Law Review, 220 et seq. We do not understand that all notice by publication is a denial of due process. We believe that the rule applicable here is expressed in Utley v. City of St. Petersburg, 292 U.S. 106, 54 S.Ct. 593, 595, 78 L.Ed. 1155:

"  *  *  * There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land [citing cases] or in proceedings for collection afterwards [citing cases]."

This action was brought under the authority of § 11–707, A.R.S.1956. That statute permits any party aggrieved by an act of the Board of Supervisors in the establishment of an improvement district to bring a suit within 20 days to set aside the action of the Board. It is the measure of appellants' rights, and they have enjoyed the full measure of their rights by this appeal. As yet no assessment or charge has been imposed upon their land. When that time comes, if ever, the courts will be open to hear appellants' complaint that the Act is unconstitutional because it has deprived them, or is depriving them, of their property without due process of law.

Judgment of the lower court is reversed with directions to enter judgment setting aside the order of the Board of Supervisors of Maricopa County creating the Georgia Improvement District.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.