541 P.2d 932

William GILLARD and Rosanne Gillard, husband and wife, Cloyce F. Hedges and Ruth N. Hedges, husband and wife, Appellants,

v.

ESTRELLA DELLS I IMPROVEMENT DISTRICT, Eldon Rudd, J. Robert Stark, Robert Corbin, Henry Haws and Joe Eddie Lopez as Members of and Constituting the Board of Directors of Estrella Dells I Improvement District, Clearwater Utilities Company, Inc., an Arizona Corporation, Paul B. Guerin and Jane Doe Guerin, husband and wife, Eldon Rudd, J. Robert Stark, Robert Corbin, Henry Haws and Joe Eddie Lopez as Members of and Constituting the Maricopa County Board of Supervisors and Asphalt Service of Arizona, Inc., an Arizona Corporation, Appellees.

No. I CA–CIV 2645.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 28, 1975.

Rehearing Denied Dec. 18, 1975.
Review Denied Jan. 27, 1976.

Steven M. Friedman, Clayton W. Plotkin, Phoenix, for appellants.

Moise Berger, Maricopa County Atty., by Douglas G. Zimmerman, Deputy County Atty., and Gust, Rosenfeld, Divelbess &

Henderson, by Fred H. Rosenfeld, Jane Rex Greer, Phoenix, for appellees.

## OPINION

EUBANK, Judge.

This appeal primarily challenges the constitutionality of A.R.S. §§ 11–703A and 11–705B, which provide for the creation of county improvement districts, and for notice of the initial hearing.

Appellants are prosecuting their suit as a class action, and the class consists of those owners of property in the Estrella Dells I Improvement District as of June 11, 1973. On that date, an action was commenced pursuant to A.R.S. § 12–1831 et seq., which sought a judgment declaring "the Arizona Statutes providing for the organization of and operation of improvement districts unconstitutional and void," and voiding (1) the establishment of this particular improvement district, (2) all contracts and agreements executed by this district, and (3) all assessments made with regard to this district.

Appellees moved for summary judgment, and their motion was granted. Appellants appeal to this Court from the summary judgment.

The constitutional attack by appellants is two-fold. First, they contend that the statutory provisions relating to the notice to be given to property owners within the proposed district in regard to the creation of the district do not comport with constitutional due process. Their second constitutional claim attacks the petitioning procedure as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## THE SUFFICIENCY OF NOTICE UNDER A.R.S. § 11–705B

A.R.S. § 11–705B sets forth the requirements for notice to landowners announcing the hearing on the establishment of county improvement districts. It reads:

Notice announcing the hearing and stating the boundaries of the proposed district, or addition, shall be posted pub-licly at intervals no more than three hundred feet apart along the streets, within the proposed district or addition for not less than ten days prior to the date of the hearing, and shall be published twice in a newspaper of general circulation published in the county within which the proposed district or addition is located. The publications in a newspaper shall be one week apart, and the first publication shall be not less than ten days prior to the date of the hearing. The posted notice shall be headed "notice of hearing on establishment of proposed improvement district" or "notice of hearing on proposed addition to improvement district" in letters at least one inch in height.

Appellants claim that this notice is constitutionally insufficient. They describe this stage of the life of an improvement district as the most crucial and argue that an assessment against an individual's land is a certainty—a *fait accompli*—once the district has been formed by the Board of Supervisors. After the district has been formed, the appellants' argument continues, property owners cannot dispute that money is owing; they are only permitted to quibble about the exact amount owing. Therefore, they conclude, the establishment of the district actually constitutes a "taking" of the landowners' property, and due process requires that the affected parties receive personal, rather than posted or published, notice prior thereto.

■ We are unable to accept this reasoning. First, it is clear that the initial determination whether to create county improvement districts is a legislative function which has been delegated to the Board of Supervisors by the legislature. The role of the Board is not at all ministerial; rather, the Board has full discretion, within the standards set by the legislature in A.R.S. § 11–706, whether or not to establish an improvement district. Section 11–706 reads:

A. Upon the hearing, if it appears after consideration of all objections that

the petition is signed by the requisite number of owners of real property, and that the public convenience, necessity or welfare will be promoted by the establishment of the district, the board of supervisors by formal order, shall declare its findings, establish the boundaries, and declare the improvement .district organized under a corporate name by which it shall be known in all proceedings. Thereafter the district shall be a body corporate with the powers of a municipal corporation for the purposes of carrying out the provisions of this article.

B. If the board finds that the territory set out in the petition should not be incorporated into an improvement district, it shall dismiss the proceedings and tax the costs against the signers of the petition, and may collect the costs on the bond of the petitioners. If the district is established, certified bills covering the costs of the board of supervisors and the disbursements of the petitioners shall be presented to the board of directors of the district and paid from the funds of the district.

C. If it appears to the board of supervisors at the hearing that territory not included in the petition should be included within the improvement district, the real property owners in the additional territory shall be notified in like manner as provided in connection with the original hearing, and a subsequent hearing shall be held on the question of including the additional territory. In establishing the improvement district, the board shall eliminate any territory described in the petition which it finds will not be benefited by the establishment of the district.

D. Additions to and alterations of an improvement district shall be made in the manner provided for the establishment of the district.

■ Thus, the process of seeking to have an improvement district formed is essentially political and has all the attributes of any legislative petitioning. Nowhere have the courts recognized a due process right to be heard during political-legislative decision-making, except where the legislature has provided the right as in the adoption of a county zoning plan. A.R.S. § 11–822. *See* M. Schroeder, "Public Regulation of Private Land Use In Arizona, (Part I)," 1973 *Law & Soc. O. 747.*

■ Second, the appellants are incorrect when they say that an assessment necessarily follows the creation of an improvement district. A.R.S. § 11–727F allows objections to be made at the hearing on any assessment before the Board of Supervisors, and provides that the objections can relate to any aspect of the creation and development of the improvement district. A.R.S. § 11–727F reads:

The owners, contractor and all other persons directly interested in the work or in the assessment, who have any objection to the legality of the assessment or to any of the previous proceedings connected therewith, or who claim that the work has not been performed according to the contract, may, prior to the time fixed for the hearing, file a written notice briefly specifying the grounds of their objections. At the time fixed for the hearing or at any time not later than ten days thereafter to which the hearing may be postponed, the board of directors shall hear and pass upon the objections. The decision of the board of directors shall be final and conclusive upon all persons entitled to object as to all errors, informalities and irregularities which the board of directors might have remedied or avoided at any time during the progress of the proceedings.

Therefore, appellants had an opportunity at the hearing on the assessment to make those challenges to the creation of the district which they claim should have been made at the hearing on the petition. Appellants conceded at oral argument that there are no constitutional infirmities in the statute prescribing notice for the hear-

ing on the assessment, A.R.S. § 11–727E [1], and they have admitted, in response to appellees' requests for admissions, pursuant to Rule 36, Rules of Civil Procedure, 16 A.R.S., that all members of the class received the mailed notice of the hearing on the assessment. Thus, appellants have been accorded full due process.

Third, our Supreme Court already has considered the question of the notice required at the creation of a county improvement district. In *Wahl v. Hart*, 85 Ariz. 85, 332 P.2d 195 (1958), the constitutionality of A.R.S. § 11–705B was attacked as a taking of property without due process of law. At the time *Wahl* was decided, § 11–705B required notice to be published "twice in a newspaper published in the county and of general circulation within the proposed district." Under this older version of § 11–705B as applied to the facts in that case, the order creating an improvement district was set aside. However, in answering the appellants' constitutinal argument against the validity of § 11–705B, the Supreme Court said, 85 Ariz. at 89, 332 P.2d at 197:

> * * * We believe that the rule applicable here is expressed in *Utley v. City of St. Petersburg,* 292 U.S. 106, 54 S.Ct. 593, 595, 78 L.Ed. 1155:
>
> " * * * There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land [citing cases] or in proceedings for collection afterwards [citing cases]."

Appellants argue that the decision in *Henningson, Durham & Richardson v. Prochnow*, 13 Ariz.App. 411, 477 P.2d 285 (1970), changes this rule somehow. Appellants quote from 13 Ariz.App. at 416, 477 P.2d at 290:

> From a reading of the statutes creating county improvement districts, it is readily apparent that notice to persons affected by the improvement district and the corresponding right of those persons to a hearing are given during all stages of the creation, and execution of the improvement district. This is for the obvious reason that any cost of the completed project required by the district becomes a lien on the land of the persons owning property in the district, and these lands are subject to foreclosure and loss for non-payment of assessments. *See* ARS § 11–734, et seq. (1956). Due process would require an opportunity to be heard *on all phases of this lien creating process.* Ariz.Const. Art. 2, § 4. Thus, all statutes governing improvement districts are to be strictly complied with. *See Nicholas v. Fowler*, 89 Ariz. 7, 357 P.2d 331 (1960) ; *Phoenix Title & Trust Co. v. Burns*, 96 Ariz. 332, 395 P.2d 532 (1964). (Emphasis added.)

We cannot accept appellant's reading of *Henningson* for two reasons. First, the notice referred to is nothing more than that provided for in the statutes ; the opinion does not suggest either explicitly or implicity that something more is required.

Second, the opinion speaks of an opportunity to be heard *on* all phases of the lien-creating process. This does not mean, as

---

1. E. Upon recording the assessment and warrant, the superintendent shall notify the board of directors of the recording, and the board shall fix a time when it will hear and pass upon the assessment and the . proceedings theretofore had and taken, which shall not be less than twenty days from the date of the recording. The board shall cause notice of the hearing to be given by publication for five days in a daily newspaper or two times in a semiweekly or weekly newspaper published and of general circulation in the county within which the district is located, the first publication of which shall be at least ten days prior to the hearing and by mailing a copy of said notice showing amount of proposed assessment to every person interested who has filed his name and address with the superintendent of streets ; the board shall also cause notice of the hearing to be posted conspicuously along the streets within the district at intervals not more than three hundred feet apart, at least ten days prior to the hearing, which notice shall be headed "notice of hearing on assessment" in letters at least one inch high.

appellants suggest, that there must be an opportunity to be heard *at* all phases, especially when some of those phases represent legislative decision-making in its clearest form. Anything to the contrary would constitute dicta. As has already been indicated, landowners can be heard on all issues at the hearing on the assessment, and the validity of the entire assessment can be challenged at that time.

For these reasons, we conclude that the appellants had sufficient notice and were not deprived of their property without due process of law.

## EQUAL PROTECTION PROBLEMS UNDER A.R.S. § 11–703A

Under A.R.S. § 11–703A [2], a special improvement district may be formed upon a petition signed by 51% of the landowners in the proposed district, or by a petition signed by the owners of 51% of the land in the proposed district. This district was formed by the latter method, and appellants claim that this method of giving more weight to the signatures of a smaller number of owners of larger amounts of property violates the Equal Protection Clause.

We understand appellants' equal protection argument to be that A.R.S. § 11–703A, which, in the petitioning process, may give more weight to the signature of an owner of a large amount of property than that given to the signature of an owner of a smaller amount of property, must be found unconstitutional by reason of (a) the decision in *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), (b) the decision in *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L. Ed.2d 659 (1973), and (c) the existence of inconsistent statutory provisions relating to the formation of other types of improvement districts.

The United States Supreme Court in *Kolodziejski,* supra, invalidated certain of Arizona's constitutional and statutory provisions which excluded non-property owners from participating in elections to authorize the issue of general obligation bonds.

Appellants' reliance upon *Kolodziejski* is inapposite for several significant reasons. First, the most obvious difference is that *Kolodziejski* dealt with election procedures, whereas this case involves petitioning procedures to an executive body performing a delegated legislative duty. Therefore, whatever infirmities may be found in a system allowing weighted voting are not present in a simple petitioning procedure such as that envisaged by A.R.S. § 11–703A.

Second, *Kolodziejski* was concerned with general obligation municipal bonds, whereas the subject of this case is specific obligations in the form of special assessments against individual parcels of property; the improvement district itself would not be responsible in the event of a default, while the city continues to be responsible for its bond obligations. Finally, *Kolodziejski* emphasized the distinction between property owners and non-property owners. Here, only property owners' rights are involved.

Similarly, the result in *Salyer Land Co.,* supra, does not assist appellants. There, the United States Supreme Court approved a state statute which limited to landowners the right to vote for directors of a water storage district. The water storage district in *Salyer Land Co.* and the special improvement district involved in this case have many similar characteristics, the Court describing that district and its burdens as follows:

> Not only does the district not exercise what might be thought of as "normal governmental" authority, but its actions

**2.** A petition addressed to the board of supervisors requesting the establishment of an improvement district may be filed with the clerk of the board, if signed by a majority of the persons owning real property or by the owners of fifty-one per cent or more of the real property within the limits of the proposed district.

disproportionately affect landowners. All of the costs of district projects are assessed against land by assessors in proportion to the benefits received. Likewise, charges for services rendered are collectible from persons receiving their benefit in proportion to the services. When such persons are delinquent in payment, just as in the case of delinquency in payments of assessments, such charges become a lien on the land. Calif.Water Code §§ 47183, 46280. In short, there is no way that the economic burdens of district operations can fall on residents *qua* residents, and the operations of the districts primarily affect the land within their boundaries. [Footnote omitted.]

Under these circumstances, it is quite understandable that the statutory framework for election of directors of the appellee focuses on the land benefited, rather than on people as such. (410 U. S. at 729, 93 S.Ct. at 1230, 35 L.Ed.2d at 667.)

Appellants' reasoning apparently is that, whereas the Supreme Court upheld the voting procedure involved in *Salyer Land Co.*, it did not address itself to the issue of the creation of such districts. Therefore, appellants claim, their position has not been precluded.

*Salyer Land Co.* does not command the result which appellants suggest for two reasons. First, the procedures in *Salyer Land Co.* did not involve the weighting of votes among landowners, which appellants contend is the constitutional infirmity in this case. Second, since the district election procedure was upheld in *Salyer Land Co.*, and since voting is a fundamental right, it can hardly be suggested that a district formation procedure, based upon petition rather than the fundamental right of voting, must be struck down on the basis of equal protection.

■ Finally, the fact that agricultural improvement districts are formed after election, rather than by petition, does not require county improvement districts to be invalidated because the same procedure is not provided for them. The legislature is not constitutionally compelled to require that an improvement district be formed by election, nor is it prohibited from using this method where deemed by it to be more suitable.

■ Since neither suspect classifications nor fundamental rights are involved in the statutes allowing the creation of the county improvement districts, the test to be used in determining whether A.R.S. § 11–703A violates the Equal Protection Clause is the rational basis test. Under this test, the legislative classification in A.R.S. § 11–703A will not be set aside if any set of facts rationally justifying it is demonstrated to or perceived by the courts. *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974).

The petitioning process is an effective means whereby a group of interested property owners can place formally before the Board of Supervisors their perceived need for certain improvements. It must be remembered that the petitioners might be a majority of the persons living in the proposed district who own only a small amount of the realty involved but who nevertheless seek also to obligate the owners of most of the property in the proposed district. Or, as here, the petitioners might be owners of most of the land, but not be a majority of the landowners in the district, who seek to obligate the others. In other words, the weighting of the signatures on the petitions can go either way.

Property owners are given both posted and published notice, so they are able to voice their objections at the hearing on the petition. It is possible for them to be withdrawn from the district if their objections are convincing to the Board. Moreover, the hearing on the assessment provides another forum and another opportunity for property owners to object, if they so desire.

■ An improvement district is not necessarily invalid merely because certain in-

dividuals are included within it against their wishes. Traditionally, we rely upon the desires of a majority to determine how our government is to be run, and there generally is a minority disgruntled by the effect of any decision.

■ This is no less true with the formation of special improvement districts than with other important decisions. However, in the case of special improvement districts, the problem of land ownership is so closely associated with the issue of defining what the majority is, that the legislature has allowed "majority" to be defined in either of two possible ways when special improvement districts are being considered: 51% of the landowners, or owners of 51% of the land. The courts cannot say, as a matter of law, that the property rights of owners of small amounts of land or of owners of large amounts of land are substantively different in the petitioning process; the alternative method provided in A.R.S. § 11–703A takes into account either contingency.

To the extent that there are conflicts between petitioners and opponents to the petition, then the Board of Supervisors must act as arbiter. To the extent that the conflicts are unresolvable, then the Board of Supervisors has shown that it is only a human agency.

For the reasons expressed heretofore, we hold that A.R.S. §. 11–703A, allowing the owners of 51% of the land in a proposed special improvement district to petition the Board of Supervisors for the creation of a district, where those landowners do not constitute a majority of the landowners within the proposed district, does not deprive the majority of the landowners of the equal protection of the laws.

## THE PROPRIETY OF PROCEEDING BY SUMMARY JUDGMENT

■ Another issue raised in appellants' brief is that "Summary Judgment Should be Cautiously Given." However, appellants merely recite general principles of law and conclude with the statement, "It is respectfully submitted that the allegations, exhibits and affidavits before the Court below are insufficient to sustain the Court's decision granting summary judgment."

Rule 5(b)(9), Rules of the Supreme Court, 17A A.R.S., requires that the appellants' argument exhibit clearly the points of fact and of law to be presented. A casual reference to the entire record is insufficient to satisfy this rule. Appellants provide the Court with no assistance whatsoever in determining whether the trial court was proper in proceeding by way of summary judgment. Therefore, we would be justified in refusing to consider this element of the appeal.

However, another question presented by appellants deals with the problem of whether the notice required by A.R.S. § 11–705B actually was given. Since this issue is so closely associated with the summary judgment issue—since by granting summary judgment, the trial court in effect held that the statute had been complied with—we will use this second question as a means whereby the first question may be considered.

Appellants claim that certain affidavits presented in support of appellees' motion for summary judgment contained conclusions of law. However, appellants never controverted these affidavits.

Rule 56(e), Rules of Civil Procedure, 16 A.R.S., provides as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

██ It must be remembered that on a motion for summary judgment, the trial court cannot balance the merits of the parties' affidavits; it can only examine them to see if a genuine issue of material fact exists. *In re Estate of Sherer,* 10 Ariz.App. 31, 455 P.2d 480 (1969). This is the purpose of controverting affidavits; if the party resisting the motion for summary judgment fails to establish, through the use of controverting affidavits, that a genuine issue of material fact exists, then the facts stated in movant's affidavits are taken as true. *Swansea Properties Inc. v. Hedrick,* 3 Ariz.App. 594, 416 P.2d 1015 (1966); *Compton v. National Metals Co.,* 10 Ariz. App. 366, 459 P.2d 93 (1969). In such a circumstance, summary judgment is mandatory unless the papers of the movant do not establish that he is entitled to a judgment as a matter of law. *Eastwood Electric Co. v. R. L. Branaman Contractor, Inc.,* 102 Ariz. 406, 432 P.2d 139 (1967); *Compton,* supra.

██ In the absence of any controverting affidavits, appellees' motion and supporting affidavit show that they are entitled to summary judgment, since the affidavit shows a compliance with A.R.S. § 11–705B. Appellants argue that certain statements in the affidavit, that notice was published in a newspaper "of general circulation in the county" and that notice was posted "along streets within the district" are impermissible conclusions of law. But, appellants' ultimate argument is not that no legally sufficient affidavit was filed which would have been the effect of a supporting affidavit which contained conclusions of law rather than statements of fact. Rather, appellants argue that these statements gave rise to triable issues of fact, namely whether the newspaper is a newspaper of general circulation within the county, and whether the streets are streets within the district. These factual issues, if they were to have been raised at all, had to have been raised by controverting affidavits supplementing appellants' response to appellees' motion for summary jdugment. Appellants cannot avoid the requirement that they furnish controverting affidavits by appealing on the grounds that appellees' affidavits contain law rather than facts.

## THE PROPRIETY OF DISALLOWING THE THIRD AMENDED COMPLAINT

██ Appellants filed their original complaint and two amended complaints. They claim that the trial court erred in refusing to allow them to file a third amended complaint.

In their brief, appellants failed to discuss their third amended complaint or to show how it differed from any of their earlier complaints. Rule 5(b)(9), Rules of the Supreme Court, 17A A.R.S., requires more than the general comments found in appellants' brief, and accordingly, we decline to consider this issue.

The judgment appealed from is affirmed.

JACOBSON, P. J., and HAIRE, C. J., Division 1, concurring.