GREAT SOUTHERN MEDIA, INC., AND B. E. FOWLER, PLAINTIFFS V.
McDOWELL COUNTY, A BODY POLITIC AND CORPORATE; PAUL RICHARDSON,
CHAIRMAN, McDOWELL COUNTY BOARD OF COMMISSIONERS; GUY L. HENSLEY,
VICE-CHAIRMAN, McDOWELL COUNTY BOARD OF COMMISSIONERS; GEORGE G.
ELLIS; JANE GREENLEE; AND NED L. McGIMSEY, MEMBERS, McDOWELL
COUNTY BOARD OF COMMISSIONERS; RONI HALL, McDOWELL COUNTY BOARD OF
COMMISSIONERS; RONI HALL, McDOWELL COUNTY TAX COLLECTOR; AND JACK
H. HARMON, COUNTY MANAGER, McDOWELL COUNTY; ALL INDIVIDUALLY AND IN
THEIR OFFICIAL CAPACITIES; AND JAYVEE PUBLISHING COMPANY, A PARTNERSHIP,
DEFENDANTS

No. 8029SC540

(Filed 3 March 1981)

1. Notice § 2; Taxation § 39.2— notice of tax lien sale — newspaper of general
circulation — evidence of unpaid distribution

While evidence of unpaid distribution of a newspaper might have been
irrelevant to a determination of whether the newspaper was one of "general
circulation to actual paid subscribers" which could properly publish notices of
tax lien sales, the admission of such evidence was not prejudicial error in this case
since the evidence supported the court's findings with respect to actual paid
subscribers and the court did not rely upon such evidence in its findings and
conclusions.

2. Notice § 2; Taxation § 39.2— notice of tax lien sale — newspaper with a
general circulation to actual paid subscribers

A newspaper publishing notices of tax lien sales must be one with a "general
circulation to actual paid subscribers" as required by G.S. 1-597 rather than
merely one of "general circulation in the taxing unit" as required by G.S. 105-
369(d).

3. Notice § 2; Taxation § 39.2— newspaper of general circulation

A newspaper of general circulation is a publication to which the general
public would resort in order to be informed of the news and intelligence of the
day, editorial opinions, and advertisements, and thereby to render it probable
that a "notice" would be brought to the attention of the general public.

4. Notice § 2; Taxation § 39.2— newspaper of general circulation

Whether a newspaper is one of general circulation is not determined merely
by the number of its subscribers, but by the diversity of those subscribers, and
even if the newspaper is of particular interest to a particular class of persons, if it
contains news of a general character and interest to the community, although
that news may be limited in amount, the newspaper qualifies as one of general

circulation.

**5. Notice § 2; Taxation § 39.2— notice of tax lien sales — newspaper of general
circulation to actual paid subscribers — sufficiency of findings**

  The trial court properly concluded that a newspaper was one of "general
circulation to actual paid subscribers" which could properly publish a county's
notices of tax lien sales where the court made findings supported by competent
evidence that the newspaper has actual paid subscribers in all parts of the county;
the newspaper contains a wide variety of news items and advertisements of
importance to all citizens of the county; the newspaper is not intended to serve any
particular class of persons; although the newspaper is published in a small town,
it does not merely cover items of interest to the town; and the paid distribution of
the newspaper covers an area containing the bulk of the county's registered
voters.

**6. Notice § 2; Taxation § 39.2— notice of tax lien sales — choice of newspaper by
tax collector — ratification by county commissioners**

  When a county tax collector decided that the notice of sale of tax liens was to
be published in a specific newspaper and then orally contracted for the publica-
tion, the tax collector was merely performing one of the incidental and adminis-
trative duties associated with carrying out a directive by the Board of County
Commissioners pursuant to G.S. 105-369(a) as to handling the sale of tax liens.
However, if formal action by the county commissioners was necessary with
respect to authorizing the publication of the tax lien sale notice in such news-
paper, the action of the commissioners in thereafter ratifying the actions taken by
the tax collector satisfied that requirement.

  Judge CLARK dissenting.

APPEAL by plaintiffs from *Ferrell, Judge.* Judgment entered
24 December 1979 in Superior Court, MCDOWELL County. Heard
in the Court of Appeals 6 January 1981.

  This is a declaratory judgment action wherein plaintiffs, pub-
lishers of *The McDowell News,* a newspaper in McDowell County,
seek to have defendant McDowell County's notice of tax lien sales
for the year 1979 published in *The Old Fort Dispatch,* another
newspaper in McDowell County, declared to be of no force and
effect and to have the actions of the defendant individuals, acting on
behalf of defendant county in causing such publication, declared
improper and invalid. Plaintiffs also seek to enjoin any further
publication of tax lien sale notices in *The Old Fort Dispatch* and
publication of such notices without formal action of the McDowell
County Board of Commissioners at a public and open meeting. In
the first claim for relief in their complaint, plaintiffs, among other
things, alleged the following: Pursuant to G.S. § 105-369(d), Mc-
Dowell County is required to publish once a week for four succes-

sive weeks preceding the annual tax lien sale a notice of the sale in a newspaper "having general circulation in the taxing unit"; the cost of publishing the notice is paid from the general revenues of the county generated by payment of taxes by citizens of the county including plaintiffs; this notice must also satisfy the requirements of G.S. § 1-597, including that the notice is to be published in a newspaper "with a general circulation to actual paid subscribers"; *The McDowell News*, published by plaintiffs, is the only newspaper in McDowell County meeting the criteria of G.S. §§ 1-597, 105-369(d); while for many years prior to 9 May 1979 McDowell County had its tax lien sale notice published in *The McDowell News*, defendant McDowell County, acting through the defendant individuals, caused the 1979 notice to be published in consecutive weeks beginning 9 May 1979 in *The Old Fort Dispatch*, another newspaper in McDowell County; *The Old Fort Dispatch* does not meet the previously mentioned requirements of G.S. §§ 1-597, 105-369(d), and publication of the tax lien sale notice in the *Dispatch* "is, therefore, unlawful and of no force and effect, and the expenditure of public funds for same is improper"; and such publication, unless restrained, would result in sales without actual or legal notice to the owners of the property and "without meaningful opportunity, in a manner consistent with due process of law, to contest the amount of taxes alleged to be due and the sale of the tax lien."

In their second claim for relief, plaintiffs alleged that the order of the McDowell County Board of Commissioners regarding the advertisement and sale of the tax liens, and the contract made with *The Old Fort Dispatch* as a result, were "not corporate actions authorized by the defendant county commissioners as a body convened in legal session . . ." and therefore the order was "unlawful and invalid" and the contract was "improper and void." Plaintiffs' third claim for relief alleged that the actions taken by defendants in ordering the advertisement and sale of the tax liens and in contracting with *The Old Fort Dispatch* for the publication of such advertisement, were "not deliberated and decided at an official public meeting of the Board of Commissioners of McDowell County, . . . and is therefore unlawful" under G.S. § 143-318.1 *et. seq.* In their fourth claim for relief, plaintiffs alleged that no notice of the tax lien sale for 1979 had been posted at the courthouse in violation of G.S. § 105-369(d). Plaintiffs sought temporary and permanent injunctive relief.

Defendants, excluding defendant Jayvee Publishing Company, answered 13 July 1979, admitting the following: the requirements of G.S. §§ 1-597, 105-369(d) must be met in publication of notice of tax lien sales; *The McDowell News* meets the criteria of G.S. §§ 1-597, 105-369(d); for many years, *The McDowell News* had published the annual notice of tax lien sales; defendants Hall and Harmon (county tax collector and county manager, respectively) caused the notice of tax lien sales for 1979 to be published in *The Old Fort Dispatch*; and the final publication of the tax lien sale notice was made on 30 May 1979 with the tax lien sale held on 4 June 1979. These defendants, however, denied the other material allegations of the complaint, and specifically alleged the following: *The Old Fort Dispatch* meets all the criteria of G.S. §§ 1-597, 105-369(d); no action of the McDowell County Board of Commissioners was required to authorize the particular newspaper in which the notice of the tax lien sales were to be published, or to contract with *The Old Fort Dispatch* for publication of the notice, said matters being "in the discretion of the Tax Collector and County Manager;" notwithstanding this, the defendant county commissioners did discuss publication in *The Old Fort Dispatch* at a meeting, open to the public pursuant to published legal notice, of the Board of County Commissioners, sitting as a Board of Equalization and Review, sometime prior to the first publication in the *Dispatch*, and on 1 June 1979 at the regularly scheduled meeting of the Board of County Commissioners, the Board did approve the publication in, and the contract with, *The Old Fort Dispatch*, as negotiated by the county tax collector and the county manager; and notice of the tax lien sales was properly posted at the county courthouse. These defendants also moved to dismiss the action pursuant to G.S. § 1A-1, Rule 12(b)(6) and for the lack of standing of plaintiffs to institute the action. Defendant Jayvee Publishing Company, publishers of *The Old Fort Dispatch*, answered 19 June 1979, making the same motions to dismiss and essentially the same admissions, denials, and allegations regarding *The Old Fort Dispatch* as the other defendants.

Prior to the introduction of evidence at trial, the parties stipulated *inter alia*, to the following: The McDowell County Board of Commissioners adopted a motion at their 1 June 1979 meeting ratifying and approving the publication of the notice of tax lien sales in *The Old Fort Dispatch* during the period in question; the notice was posted on a bulletin board at the McDowell County Administration Building, which houses the County Tax office and

various other county offices, but was not posted on the bulletin board "better known as the 'courthouse bulletin board'" located in the building housing the Clerk's office, Register of Deeds, and courtrooms; *The Old Fort Dispatch* is a newspaper "issued" in McDowell County which has been published one day each calendar week for at least twenty-five of the twenty-six consecutive weeks immediately preceding 9 May 1979; *The Old Fort Dispatch* has been admitted to the United States mails as second-class matter; *The Old Fort Dispatch* has "actual paid subscribers, meaning that there are at least two or more paid subscribers in McDowell County"; and

> [t]he only places outside of the Old Fort Community in McDowell County from which there has been a paid circulation, other than mail circulation, of *The Old Fort Dispatch* are three places of business, to wit: East Side Newsstand in Marion; G & G Minute Mart in the Greenlee, Pleasant Gardens Community; and Lake Tahoma Steak House in Pleasant Gardens Community.

Following evidence presented by plaintiffs and by defendant Jayvee Publishing Company, the court made the following pertinent findings of fact:

> (1) *The Old Fort Dispatch* is a newspaper issued in McDowell County, North Carolina, that has been regularly and continuously issued in McDowell County, North Carolina since November 15, 1973.

> (2) *The Old Fort Dispatch* has been published one day in each calendar week for at least 25 of the 26 consecutive weeks immediately preceding May 9, 1979.

> (3) *The Old Fort Dispatch* has been admitted to the United States Mails as second class matter in McDowell County, North Carolina.

> (4) *The Old Fort Dispatch* has actual paid subscribers in McDowell County, North Carolina.

> (5) Actual paid subscribers of *The Old Fort Dispatch*, who receive their copies of said newspaper by mail, live on all ten (10) rural postal routes in McDowell County.

> (6) Actual paid subscribers of *The Old Fort Dispatch* receive their copies by mail at city addresses through all

three post offices in McDowell County and at street addresses in both of the incorporated towns within McDowell County, as follows: 162 businesses and individuals in Old Fort, North Carolina; 4 individuals in Nebo, North Carolina; and 77 businesses and individuals in Marion, North Carolina.

. . .

(9) *The Old Fort Dispatch* is available for purchase by the general public in McDowell County at approximately nine different locations within McDowell County.

(10) Approximately 285 copies of *The Old Fort Dispatch* are distributed to various businesses in the immediate Old Fort area for sale . . . All of the above distributed copies of *The Old Fort Dispatch* are sold or distributed every week and on occasion the proprietors of the above grocerys [sic] call for additional copies of said newspapers.

(11) Copies of *The Old Fort Dispatch* are distributed to three locations in McDowell County outside the Old Fort area for sale to the general public, as follows: The G & G Market between Greenlee and Pleasant Gardens Communities, Lake Tahoma Steak House in Pleasant Gardens Community, and East Side News Stand in the city of Marion. Fifteen copies of the May 9 issue of *The Old Fort Dispatch* were delivered to the East Side News Stand and two copies were sold. Approximately 20 to 25 copies of *The Old Fort Dispatch* are generally delivered each week to the G & G Market and to the Lake Tahoma Steak House but an undetermined number of said papers are sold at said locations.

(12) Approximately 20 to 25 copies of *The Old Fort Dispatch* are taken approximately every week to each of approximately 13 other businesses in the Marion area for free distribution to customers of said businesses, . . . On occasions when said businesses run full page ads with *The Old Fort Dispatch*, extra copies of said issue are delivered to said business for free distribution to its customers. On occasion, approximately 15 to 25 copies of *The*

*Old Fort Dispatch* are taken to other businesses that advertise in *The Old Fort Dispatch* for free distribution to its customers.

(13) The approximate total circulation of *The Old Fort Dispatch* in the Marion area each week, both through sales and through free distribution, is 345.

(14) Businesses that advertise with *The Old Fort Dispatch* receive complimentary copies of *The Old Fort Dispatch* . . . . In addition to the businesses that receive copies of *The Old Fort Dispatch*, certain other public offices and agencies receive copies of *The Old Fort Dispatch* as follows: two libraries, one in Marion and one in Old Fort; the Sheriff of McDowell County; the Chamber of Commerce of McDowell County; and three governmental agricultural agencies.

(15) Since the publication of *The Old Fort Dispatch* began in 1973, there have been 201 advertisers from within McDowell County.

. . .

(17) The nature of the categories of items regularly contained within *The Old Fort Dispatch* include the following: current event news items that deal with Old Fort, McDowell County, and Marion; sports items that deal with teams from Old Fort, from McDowell County and from Marion; political columns from U. S. Congressman and U. S. Senator Helms; religious items; social news of Old Fort, McDowell County, and Marion; historical features, including old pictures of persons and places in McDowell County under the heading of "Shades of Yesterday"; human interest features; general and miscellaneous features; humorous items, including jokes and cartoons; legal notices; classified advertisements; commercial advertising from businesses in and around Old Fort, businesses from various places in McDowell County, businesses in and around Marion, and businesses from outside McDowell County; public service announcements, including full page promotional advertisements for the McDowell County United Way Campaign, United

States Savings Bonds, etc.; commercial news; and agricultural news.

(18) Several lawyers from McDowell County, North Carolina, have caused to be published various legal notices in *The Old Fort Dispatch* . . . . [lists nine Marion attorneys].

(19) Legal notices have also been sent to *The Old Fort Dispatch* for publication and such notices have actually been published for the following non-lawyers: The North Carolina Department of Transportation, Western Carolina Telephone Company, Duke Power Company, the Sheriff of McDowell County, and non-lawyer individuals serving as executors and administrators of descendant estates.

(20) *The Old Fort Dispatch* has regularly been publishing legal notices since 1976. The current rate for legal notices for *The Old Fort Dispatch* is $1.25 per column inch. A reduced rate of $1.15 was charged to McDowell County for the publication of the 1978 tax lien sale notices.

(21) The current rate charged by *The McDowell News* for publication of legal notices is $2.20.

(22) The publication of the 1978 tax lien sale notices for McDowell County published in *The Old Fort Dispatch* in May of 1979 required the use of 2,494 column inches. The total amount of the bill of *The Old Fort Dispatch* to the McDowell County Tax Supervisor for the said publication is $2,868.10.

(23) *The Old Fort Dispatch* published the 1977 tax lien sale notices for Old Fort Township and Crooked Creek Township in McDowell County in May of 1978 at a total approximate charge of $500.00 for 400 column inches.

(24) For the years prior to 1978 the tax lien sale notice had always been published in *The McDowell News*, without any formal action by the McDowell County Board of Commissioners.

(25) The total number of registered voters in McDowell County as of October, 1978, was 15,864. The total number

of registered voters as of said date in Marion Township was 8,313, or 52.4% of the registered voters in of McDowell County. The total number of registered voters in Old Fort Township as of said date was 1,863, representing 11.7% of the total registered voters of McDowell County. The total number of registered voters as of said date in Crooked Creek Township of McDowell County was 758, representing 4.8% of the county's registered voters. Montford-Cove Township as of said date had 592 registered voters, representing 3.7% of the county's total number of registered voters. The total registered voters for the four township [sic] in McDowell County of Montford-Cove, Crooked Creek, Old Fort and Marion contain 72.6% of the registered voters of McDowell County.

(26) The areas of McDowell County, North Carolina having the greatest circulation of *The Old Fort Dispatch* Newspaper are the same which contain 72.6% of the registered voters of McDowell County, using figures of October, 1978.

(27) The population of McDowell County is 30,000.

(28) Seventeen hundred copies of *The Old Fort Dispatch* have been published each week since the approximate date of the first publication of the 1978 tax lien sale notices for McDowell County in May of 1979. Prior to the publication by *The Old Fort Dispatch* of the 1978 McDowell County tax lien sale notices, 1,500 copies of *The Old Fort Dispatch* were published each week.

(29) The masthead of *The Old Fort Dispatch* reads in part "Proudly serving Old Fort and McDowell County, North Carolina."

(30) The decision to publish the notice of tax lien sale for deliquent [sic] 1978 taxes in *The Old Fort Dispatch* was made by the defendants, Tax Collector Roni Hall, and County Manager Jack Harmon.

(31) The defendant, County Manager Jack Harmon, discussed where they should publish the notice of tax lien sales with the McDowell County Board of Commissioners while they were sitting as the Board of Equalization and

Review sometime in May prior to the first publication; but no official action was taken by the Board of Commissioners. The meeting of the Board of Equalization and Review was held pursuant to published notice and was open to the public.

(32) At the June 1, 1979 meeting of the McDowell County Board of Commissioners, there was unanimously adopted a motion ratifying and approving the selection of *The Old Fort Dispatch* for the publication of the notice of the tax lien sale for delinquent taxes for the year 1978.

(33) The contract for publication with *The Old Fort Dispatch* was an oral contract.

(34) The tax lien sale notice was posted on the bulletin board of the McDowell County Administration Building which is attached to the McDowell County Court House and is located upon the same lot known as the Court House Lot. The Administration Building houses the McDowell County Manager's Office, McDowell County Tax Office, McDowell County Social Service Office, and McDowell County Board of Elections. The McDowell County Administration Building does not house any Judicial Offices, but all such offices along with the Sheriff's and the Register of Deeds' Offices are housed in the building known as the McDowell County Court House. The McDowell County Administration Building was constructed some few years ago and the McDowell County Court House Building was constructed in the 1920's or 1930's. The roof of the Administration Building is attached to the wall of the Court House Building and serves as a parking deck for the McDowell County Sheriff's Department and employees who work in the Court House Building.

(35) Notices for the McDowell County Board of Commissioners and the McDowell Board of Elections are posted on the bulletin board in the lobby of the Administration Building. The notice of the tax lien sale was posted on the bulletin board of the McDowell County Administration Building on May 24, 1979 by posting a copy of the May 23rd notice that appeared in *The Old Fort*

*Dispatch.* The bulletin board upon which the notice was posted had a sign that says "Notices" and is located in the lobby of the Administration Building next to the Mc-Dowell County Tax Office.

. . .

Based on these findings, the court made the following conclusions of law:

(1) *The Old Fort Dispatch* is a newspaper with a general circulation to actual paid subscribers in McDowell County within the meaning of N.C.G.S. Section 1-597, and meets all other requirements of N.C.G.S. Section 1-597.

(2) *The Old Fort Dispatch* is a newspaper having a general circulation in the taxing unit of McDowell County as required by N.C.G.S. Section 105-369(d).

(3) The McDowell County Tax Collector and the Mc-Dowell County Manager had the authority to select the newspaper in which to publish the notice of the tax lien sale for delinquent taxes for the year 1978, and no action was required of the McDowell County Commissioners.

(4) Even if the action of the McDowell County Board of Commissioners was required to place a notice of the tax lien sale of delinquent taxes for the year 1978 in *The Old Fort Dispatch*, the McDowell County Commissioners ratified and approved the publication at their June 1, 1979 meeting.

(5) The McDowell County Board of Commissioners did not violate any open meeting laws by discussing with the County Manager the newspaper in which to place the notice of tax lien sale while they were sitting in a public meeting as the Board of Equalization and Review.

(6) The bulletin board of the McDowell County Administration Building which is attached to the McDowell County Court House Building is a public place in the Court House as required by G.S. 105-369(d), and the posting of the notice of tax lien sale on such bulletin board was sufficient to meet the requirements of said statute.

From a judgment based upon the foregoing findings and conclusions declaring that the publication of notice of tax lien sales for 1979 for McDowell County in *The Old Fort Dispatch*, and the actions of defendant county and the individual defendants in ordering and authorizing such publication, were valid and proper, and denying all claims for relief, plaintiffs appealed.

*Goldsmith & Goldsmith, by C. Frank Goldsmith, Jr., for plaintiff appellants.*

*Carnes & Little, by Stephen R. Little, for the defendant appellee Jayvee Publishing Company.*

*Story & Hunter, by Robert C. Hunter, for the remaining defendant appellees.*

HEDRICK, Judge.

[1] Plaintiffs, by their first and third assignments of error, contend that the trial court erred in admitting evidence of the unpaid distribution of *The Old Fort Dispatch* and in relying upon such evidence in its findings of fact and conclusions of law. Plaintiffs argue that G.S. §§ 1-597 and 105-369(d) require that the newspaper publishing the notice of the tax lien sale must be one of "general circulation to actual paid subscribers," and that any evidence as to unpaid distribution or non-paid subscribers is therefore irrelevant to the determination of whether *The Old Fort Dispatch* satisfied the requirements of those statutes. While we agree that evidence of unpaid distribution might be irrelevant, we do not agree that the court relied upon such evidence in its findings and conclusions, and thus plaintiffs were not prejudiced thereby.

G.S. § 1-597 in pertinent part provides:

Whenever a notice or any other paper, document or legal advertisement of any kind or description shall be authorized or required by any of the laws of the State of North Carolina, heretofore or hereafter enacted ... such publication, advertisement or notice shall be of no force and effect unless it shall be published in a newspaper with a general circulation to actual paid subscribers which newspaper at the time of such publication, advertisement or notice, shall have been admitted to the United States mails as second class matter in the county or political subdivision where such publication, advertisement

or notice is required to be published, and which shall have been regularly and continuously issued in the county in which the publication, advertisement or notice is authorized or required to be published, at least one day in each calendar week for at least twenty-five of the twenty-six consecutive weeks immediately preceding the date of the first publication of such advertisement, publication or notice; . . .

G.S. § 105-369(d) in pertinent part provides:

Notice of the time, place, and purpose of the tax lien sale shall be given by advertisement at some public place at the courthouse (in the case of county taxes) . . . and by advertisement once each week for four successive weeks preceding the sale in one or more newspapers having general circulation in the taxing unit . . . .

[2]  We note at the outset that G.S. § 105-369(d), the statute most specifically designed to the instant situation, refers only to newspapers of "general circulation in the taxing unit," while G.S. § 1-597, a more general statute, refers to newspapers "with a general circulation to actual paid subscribers." When two statutes deal with the same subject matter, the statute which is addressed to a specific aspect of the subject matter takes precedence over the statute which is general in application unless the General Assembly intended to make the general statute controlling. *In re Greene*, 297 N.C. 305, 255 S.E.2d 142 (1979). In our view, the legislature intended to make G.S. § 1-597 controlling here, especially in light of the fact that the reference to "general circulation" was added to G.S. § 105-369(d) subsequent to the enactment of G.S. § 1-597. A newspaper publishing notices of tax lien sales must therefore be one with a "general circulation to actual paid subscribers."

Plaintiffs' contentions are based upon two exceptions. Exception No. 1 is set out in the record as follows:

Q. Now then, would you state to the Court whether or not copies of *The Old Fort Dispatch* are distributed to other locations in McDowell County for distribution other than sale?

OBJECTION, as to the relevancy of non-paid distribution.

COURT: Overruled.

Exception No. 8 was made to the following finding of fact made by the court:

> (13) The approximate total circulation of *The Old Fort Dispatch* in the Marion area each week, both through sales and through free distribution, is 345.

The statute clearly states that the newspaper publishing the notice must have a general circulation to its *actual paid* subscribers. Even if the evidence admitted as to non-paid subscribers, upon which the challenged finding is partially based, was declared to be irrelevant, that holding would not make any difference in the instant case since the court also made the following findings, which in turn were based upon competent evidence in the record as to the existence of actual paid subscribers:

> (4) *The Old Fort Dispatch* has actual paid subscribers in McDowell County, North Carolina.

> (5) Actual paid subscribers of *The Old Fort Dispatch*, who receive their copies of said newspaper by mail, live on all ten (10) rural postal routes in McDowell County.

> (6) Actual paid subscribers of *The Old Fort Dispatch* receive their copies by mail at city addresses through all three post offices in McDowell County and at street addresses in both of the incorporated towns within McDowell County, as follows: 162 businesses and individuals in Old Fort, North Carolina; 4 individuals in Nebo, North Carolina; and 77 businesses and individuals in Marion, North Carolina.

These findings are sufficient in our view to support the court's conclusion with respect to actual paid subscribers. Plaintiffs have failed to show any prejudicial error, and these assignments of error are without merit.

Plaintiffs next contend, based upon their fifth and tenth assignments of error, that the court erred in concluding as a matter of law that *The Old Fort Dispatch* was a newspaper with a general circulation in McDowell County to actual paid subscribers and therefore qualified to publish the 1979 notice of the tax lien sale. We do not agree.

[3, 4]   Neither the General Statutes nor the courts of this State have addressed the meaning of the phrase "general circulation." Courts in other jurisdictions, however, when faced with the lack of a statutory definition, have explained this phrase in the following ways: A newspaper of general circulation is a publication to which the general public would resort in order to be informed of the news and intelligence of the day, editorial opinions, and advertisements, and thereby to render it probable that the "notice" would be brought to the attention of the general public. *In re Herman*, 183 Cal. 153, 191 P. 934 (1920). *See also Wahl v. Hart*, 85 Ariz. 85, 332 P.2d 195 (1958). Whether a newspaper is one of general circulation is not determined merely by the number of its subscribers, but by the diversity of those subscribers, and even if the newspaper is of particular interest to a particular class of persons, if it contains news of a general character and interest to the community, although that news may be limited in amount, the newspaper qualifies as one of general circulation. *Burak v. Ditson*, 209 Iowa 926, 229 N.W. 227 (1930). It is not required that the newspaper be one that is read by all the people in the county or district, *Lynn v. Allen*, 145 Ind. 584, 44 N.E. 646 (1896), nor is it required that it reach all the voters in the district, as long as it is reasonably calculated to give notice to the persons affected. *Barrett v. Cuskelly*, 52 Misc. 2d 250, 275 N.Y.S.2d 280 (1966), *aff'd*, 28 A.D.2d 532, 279 N.Y.S.2d 380 (1967). *See*, generally, 66 C.J.S. Newspapers § 4; 58 Am. Jur. 2d Newspapers, Periodicals, and Press Associations § 7.

[5]   We have already established that the court made sufficient findings relative to *The Old Fort Dispatch* having actual paid subscribers in McDowell County. With respect to the *Dispatch* having a general circulation to these actual paid subscribers, the court made, in addition to the findings discussed heretofore, the following pertinent findings:

> (17) The nature of the categories of items regularly contained within *The Old Fort Dispatch* include the following: current event news items that deal with Old Fort, McDowell County, and Marion; sports items that deal with teams from Old Fort, from McDowell County and from Marion; political columns from U.S. congressman and U.S. Senator Helms; religious items; social news of Old Fort, McDowell County, and Marion; historical features, including old pictures of persons and places in

McDowell County under the heading of "Shades of Yesterday"; human interest features; general and miscellaneous features; humorous items, including jokes and cartoons; legal notices; classified advertisements; commercial advertising from businesses in and around Old Fort, businesses from various places in McDowell County, businesses in and around Marion, and businesses from outside McDowell County; public service announcements, including full page promotional advertisements for the McDowell County United Way Campaign, United States Savings Bonds, etc.; commercial news; and agricultural news.

(18) Several lawyers from McDowell County, North Carolina, have caused to be published various legal notices in *The Old Fort Dispatch* . . . .

(19) Legal notices have also been sent to *The Old Fort Dispatch* for publication and such notices have actually been published for the following non-lawyers: The North Carolina Department of Transportation, Western Carolina Telephone Company, Duke Power Company, the Sheriff of McDowell County, and non-lawyer individuals serving as executors and administrators of descendant estates.

. . .

(26) The areas of McDowell County, North Carolina having the greatest circulation of *The Old Fort Dispatch* Newspaper are the same which contain 72.6% of the registered voters of McDowell County, using figures of October, 1978.

(27) The population of McDowell County is 30,000.

. . .

(29) The masthead of *The Old Fort Dispatch* reads in part "Proudly serving Old Fort and McDowell County, North Carolina."

These findings, supported by competent evidence, indicate the following: *The Old Fort Dispatch* has actual paid subscribers in all parts of McDowell County; *The Old Fort Dispatch* contains a wide

variety of news items and advertisements of importance to all citizens of McDowell County; *The Old Fort Dispatch* is not intended to serve any particular class of persons, and although the newspaper is published in Old Fort, the *Dispatch* does not merely cover items of interest to the Old Fort community; and the paid distribution of the *Dispatch* covers an area containing the bulk of the county's registered voters. These findings, in our view, provide sufficient support for the conclusion that *The Old Fort Dispatch* is a newspaper with a general circulation in McDowell County to actual paid subscribers.

While we realize that the court made other findings, especially in relation to the distribution of *The Old Fort Dispatch* for sale at various businesses throughout McDowell County and the free distribution of the newspaper to customers at other businesses, which would indicate a wider circulation of the *Dispatch*, such findings are not necessary to the conclusion that the *Dispatch* has a "general circulation to actual paid subscribers" and are therefore mere surplusage. We also realize that the number of actual paid subscribers of the *Dispatch* is small relative to the number of citizens of McDowell County; however, more specificity with respect to the minimum number of actual paid subscribers required for a newspaper to be of "general circulation" is a matter for the legislature and not for the courts.

We are also of the view that the court made sufficient findings, based upon competent evidence, to support its conclusion that *The Old Fort Dispatch* meets the other requirements of G.S. §§ 1-597 and 105-369(d) and therefore the *Dispatch* was qualified to publish the notice of McDowell County's 1979 tax lien sale. These assignments of error are without merit.

[6]   Plaintiffs lastly contend, based on their sixth, seventh, eighth, and tenth assignments of error, that the trial court erred in concluding as a matter of law that the action of the county in authorizing publication of tax lien sale notices in *The Old Fort Dispatch* was proper and lawful. Plaintiffs argue that such an authorization could not lawfully be made by the county without formal action by the Board of County Commissioners in a public meeting, and since such formal action was not taken prior to the first publication of the tax lien sale notice in the *Dispatch*, the board acted unlawfully in contracting with the *Dispatch* for the publication. We disagree.

G.S. § 105-369(a) in pertinent part provides:

On the first Monday in February in each year, each county
tax collector . . . shall report to the governing body the
total amount of unpaid taxes for the current fiscal year
that are liens on real property, and the governing body
shall thereupon order the tax collector to sell such tax
liens at one of the times specified in subsection (b) . . . .

G.S. § 105-369(b) in pertinent part provides: "The county tax
lien sale shall be held on the first Monday in March, April, May, or
June . . . ."

G.S. § 105-369(d) in pertinent part provides: "Notice of the
time, place, and purpose of the tax lien sale shall be given . . . by
advertisement once each week for four successive weeks preceding
the sale in one or more newspapers having general circulation in
the taxing unit . . . ."

G.S. § 105-350 in pertinent part provides: "It shall be the duty
of each tax collector: (1) To employ all lawful means to collect all
property . . . taxes with which he is charged by the governing body
. . . ."

The unchallenged findings show that the decision to publish
the tax lien sale notice in *The Old Fort Dispatch* was made by de-
fendant Hall, the county tax collector, and defendant Harmon, the
county manager, who had discussed the matter informally with the
McDowell County Board of Commissioners. As a result of this
decision, an oral contract was made with *The Old Fort Dispatch* for
publication of the notice. When he decided, along with the county
manager, that the notice was to be published in the *Dispatch,* and
then orally contracting for the publication, the county tax collector
was merely performing one of the incidental and administrative
duties associated with his carrying out the Board's directive pursu-
ant to G.S. § 105-369(a) as to handling the sale of tax liens. Assum-
ing *arguendo* that formal action by the county commissioners was
necessary with respect to authorizing the publication of the tax lien
sale notice in *The Old Fort Dispatch,* the action of the Board at its 1
June 1979 meeting ratifying the actions taken by the county tax
collector would satisfy that requirement. The court properly con-
cluded, based on the findings, that the county's actions were proper
and lawful, and these assignments of error are without merit.

The decision of the trial court is

Affirmed.

Judge MARTIN (Robert M.) concurs.

Judge CLARK dissents.

CLARK, Judge, dissenting:

The purpose of the requirements of G.S. 1-597 for "general circulation to actual paid subscribers" and of G.S. 105-369(d) for "general circulation in the taxing unit" is twofold: (1) to give reasonable notice to the owners of property subject to the tax lien, and (2) to apprise prospective purchasers of the sale.

Old Fort is a small town in western McDowell County, about six miles from the county's western boundary. Assuming that voter registration reflects accurately the population, Old Fort Township has about 11.7% of the estimated 30,000 county population. More than half of the county population is concentrated in Marion, the county seat located in the approximate center of the county and about 10 miles east of Old Fort. The record on appeal indicates a paid circulation of 499 copies, 382 copies in Old Fort Township, and 117 copies in the remainder of the county with 88.3% of the population.

I agree with the majority that findings of fact (4), (5), and (6) are supported by the evidence. I note, however, that these findings do not include any facts relating to the number of subscribers or circulation. I do not agree with the majority that findings (17), (18), (19), (27), and (29) support the conclusion that *The Old Fort Dispatch* has general circulation. Finding (26) apparently links Old Fort to Marion, 10 miles away and having minuscule circulation of the *Dispatch*, so as to reach the misleading finding that "the areas . . . having the greatest circulation of *The Old Fort Dispatch* Newspaper are the same which contain 72.6% of the registered voters . . . ." The elimination of irrelevant and misapplied facts leaves little or nothing to support the judgment.

I cannot accept such a miserably low standard for the requirements of G.S. 1-597 and G.S. 105-369(d), which are designed primarily to protect the due process rights of the defaulting tax lister.